No. 16-15303

# United States Court of Appeals
# for the Ninth Circuit

———◆———

NORTHSTAR FINANCIAL ADVISORS, INC.,
on behalf of itself and all others similarly situated,

*Plaintiff-Appellant,*

– v. –

SCHWAB INVESTMENTS; MARIANN BYERWALER; DONALD F.
DORWARD; WILLIAM A. HASLER; ROBERT G. HOLMES; GERALD B.
SMITH; DONALD R. STEPHENS; MICHAEL W. WILSEY; CHARLES R.
SCHWAB; RANDALL W. MERK; JOSEPH H. WENDER; JOHN F. COGAN;
CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NORTHERN CALIFORNIA, SAN JOSE IN CASE NO.
5:08-CV-04119-LHK, LUCY H. KOH, DISTRICT JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

JOSEPH J. TABACCO JR.
CHRISTOPHER T. HEFFELFINGER
BERMAN DEVALERIO
One California Street, Suite 900
San Francisco, California 94111
(415) 433-3200

ROBERT C. FINKEL
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600

MARC J. GROSS
GREENBAUM ROWE SMITH
 & DAVIS LLP
75 Livingston Avenue, Suite 301
Roseland, New Jersey 07068
(973) 535-1600

*Attorneys for Plaintiff-Appellant*

## FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Northstar Financial Advisors, Inc. is a privately-held corporation. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated: June 6, 2016

   /s/ Robert C. Finkel
Robert C. Finkel (NY RF 2373)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

*Attorney for Plaintiff-Appellant Northstar Financial Advisors, Inc.*

## **TABLE OF CONTENTS**

**PAGE**

FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT .....................i

TABLE OF AUTHORITIES .......................................................................v

STATEMENT OF JURISDICTION.........................................................1

INTRODUCTION .................................................................................2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................5

STATEMENT OF THE CASE..................................................................6

    A.    The Parties To This Action ...................................................6

    B.    Pursuant To Recommendations And Communications By The Schwab Trust (The Fund's Issuer), Shareholders Vote To Approve Investment Restrictions, Creating a Contract Between Shareholders And The Schwab Trust....................................................7

    C.    Defendants Deviate From The Fund's Fundamental Investment Policies, Breaching The Contract And Causing Substantial Damages To Investors ............................................................9

    D.    Northstar Files Suit; Defendants Move To Dismiss; The District Court Grants In Part and Denies in Part That Motion By An Order Dated February 19, 2009 ("*Northstar I*") .................................10

    E.    Defendants File An Interlocutory Appeal; This Court Rules There Is No Private Right Of Action Under ICA Section 13(a) ("*Northstar II*").......................................................................11

    F.    Defendants Move To Dismiss Northstar's Second Amended Complaint; The District Court Grants That Motion By An Order Dated March 2, 2011 ("*Northstar III*")....................................12

    G.    Defendants Move To Dismiss Northstar's Third Amended Complaint; The District Court Grants That Motion With Prejudice By An Order Dated August 8, 2011 ("*Northstar IV*")........13

ii

H.    Northstar Appeals The District Court's *Northstar III* And *Northstar IV* Rulings; This Court Reverses, Reinstating All Of Plaintiff's Substantive Claims ("*Northstar V*") ...................................15

I.    Defendants Move To Dismiss Northstar's Fourth Amended Complaint; The District Court Dismisses All Of Plaintiff's Contract Claims With Prejudice Based On SLUSA By The October 2015 Order ("*Northstar VI*") ...................................17

J.    Defendants Move For Judgment On The Pleadings As To Northstar's Remaining Fiduciary Duty Breach Claims; The District Court Grants The Motion Based On SLUSA In The February 2016 Order ("*Northstar VII*") ...............................19

SUMMARY OF THE ARGUMENT ......................................................20

ARGUMENT ...........................................................................22

I.    STANDARD OF REVIEW ...........................................................22

II.    THE DISTRICT COURT ERRED IN FINDING THAT NORTHSTAR'S CLAIMS ARE PRECLUDED BY SLUSA ....................23

A.    SLUSA Is Directed At Securities Fraud Litigation ...........................23

B.    Northstar's Complaint Asserts Only Non-Precluded Claims, Namely, Garden-Variety Breach Of Contract And Breach Of Fiduciary Duty Claims, Which This Court Has Already Found To Be Well-Stated .................................................................24

C.    The District Court's Orders Conflict With The Clear And Unequivocal Language Of SLUSA......................................................27

D.    The District Court's Orders Violate The Rule That Federal Statutes That Divest State Courts of Jurisdiction Must Be Construed Narrowly ...............................................................31

E.    The District Court's Orders Are Inconsistent With This Court's Decisions in *Northstar V* And *Freeman*.............................35

F.    The Other Cases Cited By The District Court Are Distinguishable Or Otherwise Inapposite ...........................................42

III.    EVEN IF SLUSA APPLIED, THIS ACTION WOULD STLL BE PRESERVED BY THE "DELAWARE CARVE-OUT"............................46

    A.    The Delaware Carve-Out ..................................................47

    B.    Northstar's Claims Are Based On The Law Of The State Of The Schwab Trust's Organization, And This Is A Permissible Action Because It "Involves" A Shareholder Vote............................48

    C.    Defendants Are Foreclosed From Arguing That Northstar's Fiduciary Duty Claims Are Preempted By SLUSA............................52

CONCLUSION .....................................................................................54

STATEMENT OF RELATED CASES PURSUANT TO  NINTH CIRCUIT RULE 28-2.6..................................................................................56

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ACLU v. Masto*,
670 F.3d 1046 (9th Cir. 2012) ..............................................................53

*Anwar v. Fairfield Greenwich Ltd.*,
No. 09 Civ. 118(VM),
2015 WL 4610406 (S.D.N.Y. July 29, 2015)......................................46

*Chadbourne & Parke LLP v. Troice*,
__ U.S. __, 134 S. Ct. 1058 (2014).................................... 4, 21, 32, 33

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009)........................................... 14, 24, 44

*City of Ann Arbor Emps.' Ret. Sys. v. Gecht*,
No. C-06-7453 EMC,
2007 WL 760568 (N.D. Cal. March 9, 2007)............................... 49, 50

*Crimi v. Barnholt*,
No. C 08–02249 CRB,
2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ....................................51

*Dixon v. ATI Ladish LLC*,
667 F.3d 891 (7th Cir. 2012) ...............................................................54

*Dudek v. Prudential Secs., Inc.*,
295 F.3d 875 (8th Cir. 2002)................................................................46

*Fisher v. Kanas*,
487 F. Supp. 2d 270 (S.D.N.Y. 2007)..................................................54

*Freeman Invs., L.P. v. Pacific Life Ins. Co.*,
704 F.3d 1110 (9th Cir. 2013) ................................................... passim

*Hampton v. Pacific Inv. Mgmt. Co., LLC*,
No. SACV 15-00131-CJC(JCGx),
2015 WL 7292128 (C.D. Cal. Nov. 2, 2015)......................................42

*Hannon v. Wells Fargo Bank, N.A.*,
  No. 14-CV-05381-LHK,
  2015 WL 4776305 (N.D. Cal. Aug. 13, 2015) ....................................................53

*Harris v. Cty. of Orange*,
  682 F.3d 1126 (9th Cir. 2012) ..............................................................22

*In re Kingate Mgmt. Ltd. Litig.*,
  784 F.3d 128 (2d Cir. 2015)........................................................ 32, 45

*Lapidus v. Hecht,*
  232 F.3d 679 (9th Cir. 2000).............................................................52

*LaSala v. Bordier et Cie,*
  519 F.3d 121 (3d Cir. 2008).............................................................24

*Lewis v. Termeer,*
  445 F. Supp. 2d 366 (S.D.N.Y. 2006)................................................50

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ...........................................................23

*Merrill Lynch Pierce Fenner & Smith, Inc. v. Manning*,
  __ U.S. __, 136 S. Ct. 1562 (May 16, 2016) ................................. passim

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006) ........................................................................ 32, 33

*In re Metlife Demutualization Litig.*,
  No. CV 00-2258TCP-AKT,
  2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006)....................................50

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..........................................................................53

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  779 F.3d 1036 (9th Cir. 2015) ("*Northstar V*")........................... passim

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  615 F.3d 1106 (9th Cir. 2010) ("*Northstar II*") ...................................11

vi

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   No. 08-CV-4119-LHK,
   2016 WL 706018 (N.D. Cal. Feb. 23, 2016) ("*Northstar VII*").................. passim

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   135 F. Supp. 3d 1059 (N.D. Cal. 2015) ("*Northstar VI*")........................... passim

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   807 F. Supp. 2d 871 (N.D. Cal. 2011) ("*Northstar IV*").......................................15

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   781 F. Supp. 2d 926 (N.D. Cal. 2011) ("*Northstar III*") ................. 12, 13, 27, 29

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009) ("*Northstar I*") .......................................11

*Proctor v. Vishay Intertechnology Inc.*,
   584 F.3d 1208 (9th Cir. 2015) .................................................................... passim

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005)........................................................................ 40, 41

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ........................................................................................32

*Schwab Invs. v. Northstar Fin. Advisors, Inc.*,
   __ U.S. __, 136 S. Ct. 240 (2015)....................................................................17

*Segal v. Fifth Third Bank*,
   581 F.3d 305 (6th Cir. 2009)...................................................................... 40, 41

*Stoody-Broser v. Bank of Am., N.A.*,
   442 F. App'x 247 (9th Cir. 2011) ....................................................................44

*Stoody-Broser v. Bank of Am., N.A.*,
   No. C 08-02705-JSW,
   2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) .................................................44

*Stoody-Broser v. Bank of Am., N.A.,*
   No. C 08-02705-JSW,
   2012 WL 1657187 (N.D. Cal. May 10, 2012)...................................................45

*Tuttle v. Sky Bell Asset Mgmt., LLC,*
   No. C 10-03588 WHA,
   2011 WL 208060 (N.D. Cal. Jan. 21, 2011) ................................................ 43, 44

*Walling v. Beverly Enters.,*
   476 F.2d 393 (9th Cir. 1973) ............................................................................. 39

*Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.,*
   532 U.S. 588 (2001) ..................................................................................... 5, 32

**S<small>TATUTES</small>**

15 U.S.C. §77k .................................................................................................. 26

15 U.S.C. §77l .................................................................................................. 26

15 U.S.C. §77m ............................................................................................... 27

15 U.S.C. §77p ................................................................................................... 3

15 U.S.C. §77p(b) ........................................................................................ 3, 23

15 U.S.C. §77p(d)(1) ................................................................................. passim

15 U.S.C. §78aa ............................................................................................... 34

15 U.S.C. §78bb ................................................................................................. 3

15 U.S.C. §78j(b) ............................................................................................. 26

28 U.S.C. §1291 ................................................................................................. 1

28 U.S.C. §1332(d)(2) ....................................................................................... 1

28 U.S.C. §1367 ................................................................................................. 1

28 U.S.C. §1658(b) .......................................................................................... 27

**R<small>ULES</small>**

Fed. R. App. P. 4(a)(1)(A) .................................................................................. 1

# STATEMENT OF JURISDICTION

This appeal is taken pursuant to Federal Rule of Appellate Procedure 3 from final orders of the United States District Court for the Northern District of California (the "District Court") entered October 5, 2015 (ER31-72, the "October 2016 Order" or "*Northstar VI*") and February 23, 2016 (ER2-30, the "February 2016 Order" or "*Northstar VII*," collectively with the October 2016 Order, the "Orders"),[1] and from final Judgment of the District Court entered February 23, 2016 (ER1).

The District Court had jurisdiction pursuant to 28 U.S.C. §§1332(d)(2) and 1367 because plaintiff-appellant Northstar Financial Advisors, Inc. ("Northstar" or "plaintiff") is diverse from at least one of the defendants and the amount in controversy exceeds $5 million.  ER130, ¶21.

This Court has jurisdiction under 28 U.S.C. §1291 because this appeal is taken from the final Orders and Judgment of the District Court.  This appeal is timely pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A) because plaintiff filed its Notice of Appeal on February 25, 2016, within thirty days of the February 23, 2016 entry of the Judgment below.  ER 1, 73-77.

---

[1] "ER refers to the Excerpts of Record filed herewith.

**INTRODUCTION**

Northstar alleges state law claims that defendants breached their contractual and fiduciary obligations by deviating from the express, shareholder-approved fundamental investment policies of the Schwab Total Bond Market Fund (the "Fund") to track the Lehman Brothers U.S. Aggregate Bond Index (the "Index") and to invest no more than 25% of the Fund's total assets in any "industry." As this Court held in its April 28, 2015 opinion in this action, a contract was formed pursuant to a July 25, 1997 Proxy Statement when Schwab Investments (the "Schwab Trust" that established the Fund) recommended and Fund shareholders approved these fundamental investment objectives. *Northstar V*, ER213, 219; *see* pp. 15-17 below.[2] Due to defendants' breaches of their contractual and fiduciary duties, Northstar and the members of the proposed class of shareholders suffered damages when the Fund underperformed its Index by 12.64%. ER147, ¶111.

The District Court's Orders dismissed all of Northstar's claims as precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). The dismissals were in error. SLUSA preempts only state law class actions "*alleging an untrue statement or omission of a material fact in connection with the purchase*

---

[2] This Court's April 28, 2015 opinion is referred to herein as "*Northstar V*," and was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015).

2

or sale of a covered security." 15 U.S.C. §77p(b)(1) (emphasis added).[3]

Northstar's complaint contains *no* allegation of misrepresentation or omission.

Falsity is not an element, predicate act or in any way the gravamen of plaintiff's

claims. Northstar asserts only garden-variety state law contractual and fiduciary

duty claims, all of which arise directly from the contract that this Court held

existed. The District Court acknowledged as much when, in its February 2016

Order, it stated that Northstar's "core allegations" are that "Defendants deviated

from the Fund's investment objectives" by buying highly risky collateralized

mortgage obligations ("CMOs") that were not part of the Index and by

concentrating more than 25% of the Fund's assets in a single industry. ER3.

Nevertheless, the District Court concluded that because defendants failed to

disclosure their breach of contract "[t]he gravamen of Northstar's allegations" is

"that Defendants misrepresented or omitted a material fact in their management of

the Fund." ER17; *see also* ER 60-61.

A class action is not converted into a fraud case barred by SLUSA simply

because the defendant fails to disclose the contract was breached. More

fundamentally, the District Court's holdings are squarely at odds with SLUSA's

---

[3] SLUSA contains two preclusion provisions, one amending the Securities
Act, 15 U.S.C. §77p, and another amending the Securities Exchange Act, 15
U.S.C. §78bb.

*express* language, which requires dismissal only of claims "alleging" misrepresentations or omissions. The District Court's characterization of "Defendants promis[ing] to manage the Fund one way but end[ing] up managing the Fund a different way" as a misrepresentation or omission precluded by SLUSA (ER18, *see also* ER17, ER60), is in direct conflict with this Court's ruling in *Freeman Invs., L.P. v. Pacific Life Ins. Co.*, that a "promise [to do] one thing and deliver[ing] another [is] a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission." 704 F.3d 1110, 1118 (9th Cir. 2013). Indeed, the effect of the District Court's Orders was to give an expansive (and unprecedented) construction of SLUSA, even though statutes that divest a state court of jurisdiction must be narrowly construed. *See Merrill Lynch Pierce Fenner & Smith, Inc. v. Manning*, __ U.S. __, 136 S. Ct. 1562, 1573 (May 16, 2016) ("this Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires"). The District Court's ruling that defendants' failure to disclose the breach of contract (that it deviated from the contractual fundamental investment objectives) constituted a misrepresentation or omission under SLUSA (ER61), if allowed to stand, would eviscerate the established principle that SLUSA does not reach breach of contract claims. *Chadbourne & Parke LLP v. Troice*, __ U.S. __, 134 S. Ct. 1058, 1068-69 (2014) (citing *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588,

4

596 (2001)). The District Court's application of SLUSA was overbroad and departed from this proposition.

The District Court also erred when holding that Northstar's claims for breach of fiduciary duty were not preserved by the "Delaware carve-out" provisions of SLUSA, 15 U.S.C. §77p(d)(1)(A). Even if Northstar's claims do implicate SLUSA (which they do not), all but two of Northstar's claims are based upon the law of Massachusetts (the state where the Schwab Trust is organized). Northstar's claims "involve" a "recommendation, position, or other communication" that was made by the Schwab Trust, and which "concerns decisions" of Fund shareholders with "respect to voting their securities," namely the Proxy Statement that recommended the contractual fundamental investment objective to track the Index, which shareholders voted to approve, and which could not thereafter be changed without approval of a majority vote of Fund shareholders.

The District Court's holding would foreclose *all* avenues of relief—in state or federal court—to any investor challenging a failure by the managers of a mutual fund to stay within contractually agreed-upon investment restrictions.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in holding that SLUSA precludes Northstar's breach of contract and breach of fiduciary duty claims, all arising from

the contract this Court found to exist in an earlier appeal, where: (a) plaintiff's Fourth Amended Complaint ("4AC") does not contain a single allegation that defendants misrepresented or omitted a material fact; (b) none of the claims rely or depend on proof of fraudulent statements or conduct by defendants; and (c) defendants' conduct constitutes basic breaches of contract and fiduciary duty, *i.e.*, the failure to manage trust assets in a manner required by the applicable contractual and trust instruments, as well as fiduciary principles.

2. Assuming SLUSA applied to any of Northstar's claims, whether the District Court erred in holding that none of Northstar's claims were "preserved" by the "Delaware carve-out."

## STATEMENT OF THE CASE

### A. The Parties To This Action

Northstar is a registered financial advisory firm whose clients owned as of August 31, 2007 approximately 240,000 shares of the Fund (ER130-31, ¶¶24, 27). The Schwab Trust is a Massachusetts Business Trust. Its assets are held by the trustee defendants[4] for the benefit of Fund shareholders, who are the trust beneficiaries.

---

[4] The trustee defendants, hereafter collectively referenced as the "Trustees" are Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender, and John F. Cogan.

The Schwab Trust initiated the Fund on March 5, 1993. ER142, ¶78. The Fund is managed by the Trustees, who are charged with responsibility for supervising the operations of the Fund, and defendant Charles Schwab Investment Management, Inc. (the "Schwab Advisor"), an investment advisory firm affiliated with the Schwab Trust. Pursuant to a June 15, 1994 Investment Advisory Agreement ("IAA"), the Schwab Advisor acts (and has acted) as the manager of, and investment advisor to, the Schwab Trust. ER133, ¶¶42-43; ER153, ¶137; ER158, ¶160. The Schwab Advisor is responsible for the day-to-day operations of the Fund, including the selection of its investments. *Id.*

## B. Pursuant To Recommendations And Communications By The Schwab Trust (The Fund's Issuer), Shareholders Vote To Approve Investment Restrictions, Creating a Contract Between Shareholders And The Schwab Trust

The Schwab Trust originally created the Fund to be an actively managed U.S. Government bond fund. ER142, ¶¶78-79. However, pursuant to "Proposal No. 2" in a July 25, 1997 Proxy Statement (the "Proxy Statement"), the Trustees sought a shareholder vote to amend the Fund's fundamental investment objective to "attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of [the Index] through the use of an indexing strategy." ER142-43, ¶¶83-84.[5] The Proxy Statement provided

---

[5] The Lehman Index (subsequently renamed Barclays) was described in the Proxy Statement as "a broad market-weighted index which encompasses … U.S.

that, if approved, the Fund's new fundamental investment objective could be changed only by majority shareholder vote.  ER145-46, ¶97.

By Proposal No. 3 of the Proxy Statement, the Trustees also proposed a change in the Fund's "fundamental investment policies and investment restrictions" regarding concentration of investments.  ER144, ¶90; ER385 (Proxy Statement).  Proposal No. 3 was expressly intended to incorporate the SEC's interpretation of the term "concentration" from the Investment Company Act of 1940 ("ICA"), which at the time was, and remains, 25%.  *Id.*

On September 22, 1997, a majority of Fund shareholders voted to approve Proposals No. 2 and 3.  ER368; ER145, ¶95.  As this Court held, the Proxy Statement and shareholder vote formed the terms of a binding contract between investors in the Fund and the Schwab Trust, and obligated the Schwab Trust to "seek to track" the Lehman Index "through the use of an indexing strategy" and to invest no more than 25% of the Fund's total assets in any "industry."  *Northstar V*, ER210-22.

---

Treasury and agency securities, corporate bonds, international (dollar-denominated) bonds, agency mortgage-backed securities, and asset-backed securities, all with maturities greater than one year."  ER143, ¶86.

**C.**  **Defendants Deviate From The Fund's Fundamental Investment Policies, Breaching The Contract And Causing Substantial Damages To Investors**

From August 31, 1997 through August 31, 2007, an investment in the Fund substantially performed in a manner consistent with the Index, returning an annualized rate of 5.75% compared to 6.04% for the Index.  ER147, ¶108.  The Fund's net assets increased from $24 million to approximately $1.5 billion during this period.  ER147, ¶109.

This changed beginning in or about September 2007.  At that time, defendants caused the Fund to deviate from its fundamental investment policies by investing in high-risk non-United States agency CMOs that were not part of the Index, and by maintaining more than 25% of the Fund's total assets in non-agency mortgage backed securities and CMOs.  ER124-25, ¶¶4, 6.  This deviation would continue for about eighteen months, through the end of February 2009.  ER126, ¶9.  As a result of the Fund's deviation, an investment in the Fund underperformed the Index by an aggregate total return (principal plus interest) of 12.64%, causing Fund shareholders substantial direct financial injury.  ER147, ¶111.

**D.     Northstar Files Suit; Defendants Move To Dismiss; The District Court Grants In Part and Denies in Part That Motion By An Order Dated February 19, 2009 ("*Northstar I*")**

Northstar commenced this class action on August 28, 2008 to challenge defendants' failure to comply with the Fund's fundamental investment objectives. ER529-551.

Defendants moved to dismiss Northstar's initial complaint. ER556 (Dkt. No. 33). Defendants did not argue that plaintiff's claims were preempted by SLUSA. To the contrary, defendants argued that there was no private right of action for Northstar's sole federal claim, *i.e.*, for violations of Section 13(a) of the ICA (15 U.S.C. §80a-13(a)), and that the District Court could "decline to exercise supplemental jurisdiction over the complaint's state law claims." ER528. In other words, far from contending that Northstar's state law claims were precluded by SLUSA and could not be entertained anywhere, defendants suggested that such claims *were* proper subjects of state court consideration.

In its February 19, 2009 Order,[6] the District Court (per the original assigned judge) held there was a private right of action for Northstar's claim under ICA Section 13(a), and that its "allegations are sufficient to state a claim that the Fund's

---

[6] The District Court's February 19, 2009 Order is referred to herein as "*Northstar I*," and was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938 (N.D. Cal. 2009).

significant investments in non-agency CMOs violated the Fund's investment objective." *Northstar I*, ER512-16, 518. The District Court reserved decision on defendants' motion to dismiss the breach of contract and other claims[7] pending an amendment to the complaint. *Id.* at ER521-24. On March 2, 2009, Northstar filed its First Amended Complaint ("1AC"). ER480-508.

### E. Defendants File An Interlocutory Appeal; This Court Rules There Is No Private Right Of Action Under ICA Section 13(a) ("*Northstar II*")

The District Court certified its decision that a private right of action was available under ICA Section 13(a) for interlocutory appeal (ER477-79), which this Court accepted. By opinion dated August 13, 2009, this Court reversed *Northstar I*, finding no private right of action under Section 13(a). *Northstar II*, ER451.[8]

---

[7] Northstar's initial and subsequent complaints have asserted claims for breach of contract, third party breach of contract, and breach of the implied covenant of good faith and fair dealing (sometimes collectively referenced herein as the "breach of contract" claims), as well as for breach of fiduciary duty, and aiding and abetting the breach of fiduciary duty (together referenced herein as the "breach of fiduciary duty" claims).

[8] This Court's August 13, 2009 Opinion is referred to herein as "*Northstar II*," and was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106 (9th Cir. 2010).

**F.    Defendants Move To Dismiss Northstar's Second Amended Complaint; The District Court Grants That Motion By An Order Dated March 2, 2011 ("*Northstar III*")**

Before the interlocutory appeal, defendants moved to dismiss the 1AC. ER562 (Dkt. No. 88).  As in their first motion to dismiss, defendants did not contend any of Northstar's claims were precluded by SLUSA.  The District Court denied that motion, without prejudice, when it granted the motion for interlocutory appeal.  ER478-79.

On September 28, 2010, plaintiff filed a Second Amended Complaint ("2AC").  ER413-448.  This pleading added the Trustees as defendants and amended plaintiff's state law claims to address the District Court's February 19, 2009 Order (*Northstar I*).  *Id.*  Defendants again moved to dismiss.  ER568 (Dkt. No. 150).  Defendants' motion to dismiss the 2AC raised for the first time the issue of SLUSA preclusion (ER339), despite their earlier concession that Northstar's non-ICA claims could be brought in state court (ER528).

In a March 2, 2011 Order (per a newly assigned judge), the District Court granted defendants' motion.  *Northstar III*, ER325-48.[9]  The District Court held that the Schwab Trust's agreement to operate the Fund as an index fund pursuant

---

[9] The District Court's March 2, 2011 Order is referred to herein as "*Northstar III*," and was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 781 F. Supp. 2d 926 (N.D. Cal. 2011).

to Proposal No. 2 was not sufficient to form a contract with investors and dismissed with prejudice plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing. *Id.* at ER339-43. The District Court also granted defendants' motion as to plaintiff's third party beneficiary claim, but without prejudice. *Id.* at ER345-48. In addition, the District Court held that the Trustees and the Schwab Advisor owed fiduciary duties only to the Fund (not to investors), which could only be prosecuted derivatively on behalf of the Fund, rather than directly on behalf of investors. *Id.* at ER 343-45. Finally, the District Court held that all claims as pled were barred by SLUSA because the 2AC alleged misrepresentations. *Id.* at ER331-39. The District Court granted Northstar leave to amend to plead direct breach of fiduciary duty claims, to replead its third party beneficiary claims with greater specificity, and to address its holding with respect to SLUSA. *Id.* at ER348.

G.     **Defendants Move To Dismiss Northstar's Third Amended Complaint; The District Court Grants That Motion With Prejudice By An Order Dated August 8, 2011 ("*Northstar IV*")**

On March 28, 2011, Northstar filed its Third Amended Complaint ("3AC"). ER271-324. As the District Court had invited, Northstar eliminated any allegations even suggesting a misrepresentation or omission. Northstar also added allegations showing that, in any event, its claims were "preserved" under SLUSA's "Delaware carve-out." ER276, ¶15; ER287, ¶69; *see also* ER78-84, Exhibit A.

13

In addition, Northstar bifurcated the Class into Pre-Breach and Breach Classes.  ER286, ¶65.[10]  This bifurcation was intended to protect the claims of members of the Pre-Breach Class in the event that the District Court held that SLUSA was implicated during the Breach Period.[11]

Defendants moved to dismiss the 3AC.  ER572 (Dkt. No. 182).  Defendants argued that Northstar's fiduciary duty claims remained derivative.  They also continued to challenge plaintiff's third party beneficiary claims.  Defendants, however, acknowledged that Northstar had availed itself of the Delaware carve-out and did not move to dismiss the breach of fiduciary duty claims on the basis of SLUSA.  ER270 at n.5 ("Northstar avoided SLUSA preemption for its fiduciary breach claims by asserting them under Massachusetts law and coming within the 'Delaware carve-out.'").

---

[10] The Pre-Breach Class consisted of "all persons or entities who purchased shares of the Fund on or prior to August 31, 2007, and who continued to hold their shares as of August 31, 2007."  ER286, ¶65.  The Breach Class consisted of "all persons or entities who purchased shares of the Fund during the period of September 1, 2007, through February 27, 2009."  *Id.*

[11] In separating its claims into the Pre-Breach and Breach periods, Northstar followed the structure of the then-pending Schwab YieldPlus action, where the court had already rejected the same SLUSA arguments made by Defendants in this case with respect to the Schwab YieldPlus mutual fund's over-concentration in non-U.S. agency CMOs.  *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009).

In an August 8, 2011 Order, the District Court dismissed plaintiff's 3AC with prejudice in its entirety. *Northstar IV*, ER251-68.[12] The District Court held: (i) claims for breach of fiduciary duty against the Trustees or Schwab Advisor could only be asserted derivatively, and (ii) Fund investors were not third party beneficiaries of the IAA. *Id.* at ER262, 267-68. The District Court did not address whether any of Northstar's claims were precluded by SLUSA, or whether, assuming they were, plaintiff had properly invoked the "Delaware carve-out."

### H.    Northstar Appeals The District Court's *Northstar III* And *Northstar IV* Rulings; This Court Reverses, Reinstating All Of Plaintiff's Substantive Claims ("*Northstar V*")

Northstar appealed the District Court's August 8, 2011 Order (*Northstar IV*), and March 2, 2011 Order (*Northstar III*). On April 28, 2015, this Court reversed in part and vacated in part, and reinstated *all* of Northstar's substantive claims. *Northstar V*, ER181-250. Specifically, this Court held that Northstar had alleged that a contract was formed by the Fund shareholders' vote to approve the Fund's fundamental investment objectives. *Id.* at ER210-22. It found that the contract was for the benefit of existing investors in the Fund as of the 1997 shareholder vote, as well as for the benefit of new investors who subsequently purchased shares

---

[12] The District Court's August 8, 2011 Order is referred to herein as "*Northstar IV*," and was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 807 F. Supp. 2d 871 (N.D. Cal. 2011).

in the Fund. *Id.* at ER213 (holding that "anyone who purchased shares in the Fund after 1997, or held shares that he then owned, was legally and contractually entitled to have his investment managed in accordance with the proposals in the [P]roxy [S]tatement, unless the shareholders voted to permit otherwise"); *see also id.* at ER219 ("The Fund offered the shareholders the right to invest on these terms, and the shareholders accepted by so investing. The consideration for the contract was the shareholders' investment, or continued investment, in the Fund, and the parties' object was lawful. The conduct of the parties thus fulfills all the requirements for a binding contract under traditional common law principles").

Regarding Northstar's fiduciary duty claims, this Court held that the Trustees and Schwab Advisor owed fiduciary duties to the Fund shareholders, and that Northstar's claims could proceed directly, rather than derivatively. *Id.* at ER223-35. In addition, this Court held that Northstar had adequately alleged that Fund investors were third party beneficiaries of the IAA, and accordingly reversed dismissal of Northstar's third party contract claims. *Id.* at ER235-41.

The Court reserved decision on whether SLUSA applied to any of Northstar's claims, remanding the case for the District Court to consider that issue in the first instance. *Id.* at ER209, 249. Significantly, however, this Court's holdings with respect to plaintiff's substantive claims did not rely on or reference

16

any allegations of a misrepresentation or omission. *No* such allegations were contained in either the 2AC or the 3AC.

Defendants' motions for rehearing and rehearing *en banc* of *Northstar V* were denied, ER185, as was their subsequent petition for a writ of *certiorari* to the U.S. Supreme Court, *Schwab Investments v. Northstar Financial Advisors, Inc.*, __ U.S. __, 136 S. Ct. 240 (2015).

**I.** **Defendants Move To Dismiss Northstar's Fourth Amended Complaint; The District Court Dismisses All Of Plaintiff's Contract Claims With Prejudice Based On SLUSA By The October 2015 Order ("*Northstar VI*")**

On June 25, 2015, following remand, Northstar filed its 4AC, ER123-80, which alleged all the same claims as the 3AC, and reinserted the claims for breach of contract and breach of the covenant of good faith and fair dealing against the Schwab Trust that had been dismissed in *Northstar III*.

The 4AC did not contain even a single allegation of misrepresentation or omission. ER123-80. Nor (as before) did any of Northstar's contract or fiduciary breach claims have as an element or depend in any way on fraudulent or deceptive conduct. *Id.* Moreover, while Northstar was (and remains) firmly of the position that SLUSA does not apply at all to any of its causes of action, it alleged they were nonetheless preserved by the Delaware carve-out. *See* ER128-29, ¶15; ER140, ¶72.

Defendants moved to dismiss the 4AC. ER576 (Dkt. No. 217). In an Order dated October 5, 2015 (the first of the two Orders appealed from herein), the District Court granted in part and denied in part defendants' motion. *Northstar VI,* ER31-72[13]. The District Court dismissed with prejudice Northstar's claims for breach of contract, for breach of the implied covenant of good faith and fair dealing, and as a third party beneficiary of the IAA as preempted by SLUSA. *Id.* at ER71. As discussed further below, the District Court improperly converted plaintiff's breach of contract claims into fraud claims on grounds that defendants failed to disclose the breach of contract to class members. *See* ER 60-61 ("The Advisor's decision to not say anything about the Advisor's purported decision to deviate—and the resulting effect on the Fund's value—clearly constitutes a material omission").

The District Court , however, declined to dismiss Northstar's fiduciary duty breach claims,[14] finding that defendants could not assert a SLUSA defense in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), having failed to

---

[13] The October 2015 Order (*Northstar VI*) was reported as *Northstar Financial Advisors, Inc. v. Schwab Investments*, 135 F. Supp. 3d 1059 (N.D. Cal. 2015).

[14] The District Court did dismiss Northstar's claims for breach of fiduciary duty against the Schwab Trust, finding that the Schwab Trust itself owed no such duties. *Northstar VI*, ER42-48, 53. Northstar does not appeal from this limited aspect of *Northstar VI*.

raise it in their prior motion to dismiss the 3AC. *Id.* at ER44. Nevertheless, the District Court suggested that defendants could challenge plaintiff's remaining claims under SLUSA by filing a motion for judgment on the pleadings. *Id.* at ER41.

**J.** **Defendants Move For Judgment On The Pleadings As To Northstar's Remaining Fiduciary Duty Breach Claims; The District Court Grants The Motion Based On SLUSA In The February 2016 Order ("*Northstar VII*")**

Taking the District Court's cue, defendants answered the 4AC (ER85-119) and sought dismissal of all of Northstar's remaining claims pursuant to a motion for judgment on the pleading (ER581 (Dkt. No. 249)). Once again, defendants argued that such claims were precluded by SLUSA, which Northstar vigorously disputed. Among other things, Northstar submitted a schedule of amendments from the 2AC through the 4AC demonstrating that its complaint was devoid of *any* allegation or suggestion of a misrepresentation or omission. ER78-84, Exhibit A.

In a February 23, 2016 Order (the second of the two Orders appealed from herein), the District Court granted defendants' motion, holding that Northstar's fiduciary duty claims were precluded by SLUSA. *Northstar VII*, ER27.[15] The District Court essentially re-stated its *Northstar VI* analysis, and found that "[t]he

---

[15] The February 2016 Order (*Northstar VII*) is published as *Northstar Financial Advisors, Inc. v. Schwab Investments*, No. 08-CV-4119-LHK, 2016 WL 706018 (N.D. Cal. Feb. 23, 2016).

gravamen of Northstar's allegations" is "that Defendants misrepresented or omitted a material fact in their management of the Fund" (*Id.* at ER17), and "[i]f, as Northstar alleges, Defendants did deviate from the Fund's investment objectives, then Defendants committed a misrepresentation of material fact. Specifically, Defendants promised to manage the Fund one way but ended up managing the Fund a different way" (*Id.* at ER18).[16]

On the same day it issued *Northstar VII*, the District Court entered Judgment in favor of defendants. ER1. Northstar filed its timely Notice of Appeal several days later. ER73.

## SUMMARY OF THE ARGUMENT

The District Court committed reversible error in dismissing Northstar's claims on the basis of SLUSA as Northstar did not allege any misrepresentation or omission of material fact. Each dismissed claim was a garden-variety state law claim lacking as an element any sort of fraudulent or deceptive conduct.

The "core" allegations in this case, as the District Court itself characterized them, are that "Defendants deviated from the Fund's investment objectives" by buying highly risky CMOs not part of the Index the Fund's managers were

---

[16] *Northstar VII* also denied Northstar's class certification motion (ER581 (Dkt. Nos. 252-56)) as moot, and denied plaintiff's motion for leave to file a motion for reconsideration of *Northstar VI* (ER580 (Dkt. No. 243)). *Northstar VII*, ER30.

contractually-bound to mimic, and that the managers over-concentrated the Fund's assets in a manner also not permitted by the contract. *Northstar VI*, ER32; *Northstar VII*, ER3.

Thus, there was no basis for the District Court to conclude that "[t]he gravamen of Northstar's allegations" is "that Defendants misrepresented or omitted a material fact in their management of the Fund." *Northstar VII*, ER17. The mere fact that defendants failed to disclose their breach does not convert a contract or breach of fiduciary duty claim to a fraud claim. Otherwise every breach of contract and every breach of duty claim would be a fraud claim merely because of the failure to disclose the breach. Moreover, the District Court's expansive application of SLUSA conflicted with the proposition recently reaffirmed by the Supreme Court that statutes that divest a state court jurisdiction must be construed narrowly. *See Manning*, 136 S. Ct. at 1573; *Troice*, 1034 S. Ct. at 1068-69.

Even assuming that SLUSA applied to Northstar's claims, they would be preserved by the "Delaware carve-out." Each prerequisite to the application of the carve-out is present. All of Northstar's asserted causes of action, except for the third party beneficiary claims (claims 5 and 12), are based on the law of the Commonwealth of Massachusetts, where the Schwab Trust is organized as a business trust. Further, the claims "involve" the "recommendation, position, or other communication" with respect to the sale of securities of the Schwab Trust

that was made by defendants, namely, the Proxy Statement in which the Trustees unanimously recommended that Fund shareholders vote to change the Fund's fundamental investment policies. Finally, those "recommendation[s], position[s], or other communication[s]" "concern[ed]" "decisions of [the Fund's] equity holders with respect to voting their securities," namely, voting on Proposal Nos. 2 and 3 in the Proxy Statement to amend the Fund's fundamental investment policies. 15 U.S.C. §77p(d)(1)(B)(ii).

If the District Court's rulings are allowed to stand, investors such as Northstar will effectively be deprived of any remedy in state or federal court to address an investment company's deviation from a fundamental investment objective, or any other breach of contract between shareholders and an investment company, since the failure to disclose the breach would always be a misrepresentation or omission.

## **ARGUMENT**

## I.   **STANDARD OF REVIEW**

This Court reviews *de novo* a district judge's order granting a motion to dismiss, *Northstar V*, ER193, *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1218 (9th Cir. 2015), as well as a grant of judgment on the pleadings, *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012).

In evaluating Northstar's 4AC and the claims alleged, this Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Northstar V*, ER193-94 (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

## II.    THE DISTRICT COURT ERRED IN FINDING THAT NORTHSTAR'S CLAIMS ARE PRECLUDED BY SLUSA

### A.    SLUSA Is Directed At Securities Fraud Litigation

SLUSA states that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party *alleging* an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. §77p(b)(1) (emphasis added). "Congress's purpose in enacting SLUSA was to channel securities fraud litigation away from state-law class actions and into the federal courts under the Private Securities Litigation Reform Act of 1995." *Proctor*, 584 F.3d at 1217.

SLUSA has four "threshold requirements." *Id.* at 1221-22. First, it must involve "a 'covered class action,' in that the plaintiffs seek a "damages [remedy] … on behalf of more than 50 persons or prospective class members." *Id.* at 1221. Second, it must be "'based upon the statutory or common law of [a] State.'" *Id.* Third, it must involve "covered securit[ies]," *i.e.*, securities nationally traded and

listed on a national securities exchange.  *Id.*  Fourth, "the claim [must] rest[] on

allegations of "misrepresentation[s] or omission[s] of a material fact in connection

with the purchase or sale of a covered security."  *Id.* at 1222.

At issue here is the fourth requirement.  As to that requirement, in order to

be precluded by SLUSA, the "gravamen," or essence, of the claim at issue must be

fraudulent or deceptive conduct.  *Freeman*, 704 F.3d at 1115.  Put another way, if

fraudulent or deceptive conduct is *not* an essential element or "factual predicate" to

a cause of action, SLUSA is not implicated.  *In re Charles Schwab,* 257 F.R.D. at

551 ("When applying SLUSA, courts ignore extraneous allegations and focus on

the gravamen of the complaint:  'when an allegation of misrepresentation in

connection with a securities trade, implicit or explicit, operates as a factual

predicate to a legal claim, that ingredient is met.  To be a factual predicate, the fact

of a misrepresentation must be one that gives rise to liability, not merely an

extraneous detail.'" (quoting *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir.

2008)).

**B.**     **Northstar's Complaint Asserts Only Non-Precluded Claims, Namely, Garden-Variety Breach Of Contract And Breach Of Fiduciary Duty Claims, Which This Court Has Already Found To Be Well-Stated**

It is clear that the 4AC asserts *no* misrepresentations or omissions of

material fact, and neither relies on nor is dependent on such fraudulent conduct.

The "gravamen" of this case is defendants' breaches of their contractual and

fiduciary duties, in violation of their obligations under the contract found to exist by this Court. The District Court's contrary finding, *i.e.*, that the gravamen of the case is misrepresentation, is incorrect on multiple levels.

First, the District Court's finding is contradicted by its *own* description of the "core allegations" of this action, which demonstrates this is *not* a securities fraud case that SLUSA was intended to embrace:

> Northstar alleges that Defendants deviated from the Fund's investment objective to track the [Index] in two ways. First, Northstar alleges that, starting around August 31, 2007, the Fund began investing in high risk non-U.S. agency [CMOs] that were not part of the [Index] and that were substantially more risky than the U.S. agency securities and other instruments that comprised the Lehman Index. Second, Northstar alleges that, beginning around August 31, 2007, the Fund deviated from the Fund's investment objectives (which prohibited investing more than 25% of the Fund's assets in any one industry, unless such concentration was necessary to track the [Index]) by investing more than 25% of the Fund's assets in U.S. agency and non-agency mortgage-backed securities and CMOs.

*Northstar VII*, ER3 (internal citations omitted).

Second, there are no allegations in Northstar's complaint that support the characterization of this action as a misrepresentation or omission case. To the contrary, Northstar has asserted basic state law breach of contract and breach of fiduciary duty claims that do not involve or depend in any way on a misrepresentation or omission.

Indeed, in *Northstar V*, this Court sustained plaintiff's breach of contract claim without finding that plaintiff alleged any misrepresentations or omissions:

25

> [W]e conclude that the mailing of the [P]roxy [S]tatement and the adoption of the two fundamental investment policies after the shareholders voted to approve them, and the annual representations by the Fund that it would follow these policies are sufficient to form a contract between the shareholders on the one hand and the Fund and the [Schwab] Trust on the other. The Fund offered the shareholders the right to invest on these terms, and the shareholders accepted by so investing. The consideration for the contract was the shareholders' investment, or continued investment, in the Fund, and the parties' object was lawful. The conduct of the parties thus fulfills all the requirements for a binding contract under traditional common law principles.

*Northstar V*, ER219. Similarly, this Court sustained the third party breach of contract claim:

> Northstar has adequately alleged the existence of a contract between the [Schwab] Trust and the investors. Northstar has also alleged that the IAA was designed to discharge the [Schwab] Trust's duties to the shareholders under this contract. Therefore, Northstar's allegations that the shareholders are third-party beneficiaries of the IAA survive the motion to dismiss.

*Id.* at ER241. With respect to plaintiff's state claims for breach of fiduciary duty, this Court stated, "this case alleges a failure to follow trading restrictions, the very essence of the Fund's business, which, accepting the allegations as true, caused a diminution in shareholder value." *Id.* at ER228.

By contrast, Northstar would have had no basis to bring a federal claim. The federal private rights of action require allegations of false and misleading statements (*see* 15 U.S.C. §§77k and 77l, 15 U.S.C. §78j(b)), and 15 U.S.C. 78j(b) requires proof of scienter. Here, plaintiff does not allege that defendants made

26

false and misleading statements, let alone that they made them with scienter.

Moreover, those private rights of action contain statutes of repose and defendants'

wrongful conduct transpired only after those statutes expired for many if not most

class members. *See, e.g.,* 15 U.S.C. §77m ("In no event shall any such action be

brought to enforce a liability created under section 77k or 77l(a)(1) of this title

more than three years after the security was bona fide offered to the public, or

under section 77l(a)(2) of this title more than three years after the sale"). Thus the

argument that plaintiff's claim is really one for fraud and preempted by SLUSA

would allow defendants to refuse to perform *any* contract, provided that the

contract was made more than three years earlier (or five years with respect to

claims asserted under the Securities Exchange Act, 28 U.S.C. §1658(b)).

**C.  The District Court's Orders Conflict With The Clear And Unequivocal Language Of SLUSA**

In *Northstar III*, the District Court held in error that Northstar's claims

"implicated" SLUSA and that a "central theme of the [2]AC and all of Plaintiff's

claims is that defendants made misrepresentations about how investments in the

fund would be managed, that plaintiffs purchased Fund shares relying on these

misrepresentations, and that Plaintiffs were injured when these statements turned

out to be false." *Northstar III*, ER333-34. In *Northstar VI*, the District Court

essentially restated its conclusion of the "theme" of the case. *Northstar VI*, ER254.

In *Northstar VII*, the District Court cited itself yet again – and again in error – in

27

holding that the "central theme" in Northstar's complaints is that "Defendants made misrepresentations about how investments in the Fund would be managed," *Northstar VII*, ER16.

The purported misrepresentation allegations, however, simply *do not exist* in the 4AC, nor did they exist in the 2AC (the subject of *Northstar III*) or the 3AC. In fact, as shown above, the District Court in *Northstar VII* (as well as in *Northstar VI*) summarized the 4AC's "core allegations" as the Fund's deviation from its stated investment objectives, *not* that defendants misrepresented the Fund's investment objectives. *See also Northstar V,* ER186 (this Court summarized Northstar's claims as alleging "that the managers of the [Fund] failed to adhere to two of the Fund's fundamental investment objectives").[17]

The District Court based its holding on a finding that defendants' failures to disclose their breaches of contract and fiduciary duty were omissions that implicated SLUSA. *See Northstar VI*, ER59-61; *Northstar VII*, ER21-22. Yet, the

_____

[17] In the 4AC, Northstar repeatedly disclaimed any reliance on materially false and misleading statements. *See* ER123-80, ¶¶12, 14, 70, 71, 132, 143, 149, 155, 175, 202, 213, 219, 225, and 246. Although the 4AC does make reference to prospectuses, annual and semiannual reports, it does so only to provide background and factually correct information. None of the allegations in the 4AC allege that any of the prospectuses, annual or semiannual reports were materially false or misleading, and none of plaintiff's claims relies on any such allegations. *See* ER 123-80, ¶¶34, 43, 45, 53, 55, 56, 58, 95, 96, 98, 172, 184, 185, 188, 242, 243, 254, 255, and 258.

District Court's conclusion that "the [Schwab] Advisor declined to inform shareholders of the [Schwab] Advisor's decision to abandon the Fund's core investment objective" (s*ee Northstar VI*, ER61) is not an allegation contained in the 4AC, nor is it an element, predicate fact or the "gravamen" of plaintiff's action. Similarly, paragraphs 164, 166, and 174 of the 4AC, which were cited by the District Court (*see id.* at ER60 and 62) do not allege a misrepresentation or omission of material fact. Paragraph 166 alleged only that "[i]t would make no sense if the Schwab Adviser were free to deviate from the Fund's fundamental investment objectives during its management of the Fund;" paragraph 164 alleged that the IAA became effective upon a shareholder vote; and paragraph 174 alleged that class members suffered injury when the Schwab Advisor breached the terms of the IAA. ER159-61.

The District Court's citation in *Northstar VI* to *Northstar III* (ER325-48)), for the proposition that plaintiff's "third party beneficiary claims still hinge on the [Schwab] Advisor's purported misrepresentations or omissions of material fact" (*Northstar VI*, ER64) fares no better. The allegations in plaintiff's 2AC referenced in *Northstar III* (ER333) that "Class members *relied on* the Schwab Trust's, the Schwab Trustees', and the Schwab Advisors' diligence and good faith" (ER441, ¶130 (emphasis added)) and that "[t]he [Schwab] Trust appended a copy of the [IAA] to an amendment to the [Schwab] Trust's Registration Statement dated

December 29, 1997 precisely *to inform* class members of its terms" (ER446, ¶158 (emphasis added)) do not allege a misrepresentation or omission and are insufficient to convert a breach of fiduciary duty and third party breach of contract claim to a fraud claim. These allegations are basic foundational elements that establish the fiduciary relationship between the parties.

In any event, in response to *Northstar III*, Northstar amended the 2AC and removed the words "relied on" and "to inform" in the 3AC and 4AC. *See, e.g.,* ER137, ¶60 ("the Schwab Trustees, the Schwab Trust and the Schwab Advisor were obligated to exercise diligence and good faith in their management of investors' assets") and ER158, ¶160 ("[t]he [IAA] was appended by Schwab Investments as an exhibit to a Registration Statement filed with the SEC on December 29, 1997"); *see also* ER78-84 (chart of amendments from the 2AC to the 4AC).

Similarly, none of the paragraphs from the 4AC referenced in *Northstar VII* (¶¶129, 138, 148, and 154) supports the District Court's conclusions that defendants made misrepresentations (as opposed to promises) that investors relied on, and that defendants failed to make investments "in accordance to these representations" (as opposed to promises). Essentially, the District Court treated "representations" as synonymous with "promises." However, unlike a

representation, a promise can form a contract and is not subject to SLUSA preclusion. *See Freeman*, 704 F.3d at 1118.

In fact, the District Court's October 2015 Order (*Northstar VI*), took pains to specify that the 4AC contained no allegations of misrepresentations or omissions:

> [S]hareholders in the instant case were not induced by misrepresentations to vote one way or another…. By all accounts, shareholders voted for a package and, for ten years, got the package for which they voted. Northstar's breach of contract claims hinge not on the fact that a vote occurred in 1997, or any impropriety that occurred in advance of this vote, but that Defendants deviated from (or, more aptly, breached) a set of stated investment objectives beginning in August 2007.

*Northstar VI*, ER68-69. The District Court got it right when it stated that the 4AC alleged that defendants made promises and breached a set of "stated investment objectives." *Northstar VI*, ER68-69; *see also Northstar VII*, ER29. The District Court, however, got it wrong when it found that "the central theme … of plaintiff's claims is that [D]efendants made misrepresentations about how investments in the Fund would be managed, that plaintiffs purchased Fund shares relying on these representations, and that plaintiffs were injured when those statements turned out to be false." *Northstar VII*, ER16.

### D. The District Court's Orders Violate The Rule That Federal Statutes That Divest State Courts of Jurisdiction Must Be Construed Narrowly

The District Court's expansive application of SLUSA is misplaced. Although the District Court stated that "as the U.S. Supreme Court has noted,

SLUSA should be broadly construed" (*Northstar VI*, ER62 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82 (2006))), more recently, the U.S. Supreme Court has stated that SLUSA should be read narrowly to avoid encroaching on the prerogatives of state courts, including the litigation of claims for breach of contract:

> Under numerous provisions, [SLUSA] purposefully maintains state legal authority, especially over matters that are primarily of state concern…. A broad interpretation of [SLUSA] works at cross-purposes with this state-oriented concern….

*Troice*, 134 S. Ct. at 1068-69 (2014); *see also Wharf (Holdings),* 532 U.S. at 596 (recognizing that "ordinary state breach-of-contract claims" are "actions that lie outside the [Securities Exchange] Act's basic objectives"); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 478 (1977) (securities laws should be interpreted to avoid covering "a wide variety of corporate conduct traditionally left to state regulation"); *In re Kingate Mgmt. Ltd. Litig.,* 784 F.3d 128, 146 (2d Cir. 2015) ("Interpreting SLUSA to apply more broadly to state law claims that are altogether outside the prohibitions of the federal securities laws, and could not be subject to the PSLRA, would, as illustrated below, construe ambiguous provisions of SLUSA in a highly improbable manner—as prohibiting state law claims involving matters that were not Congress's concern in passing SLUSA, that have never been a subject of congressional concern, and that in a number of instances might even lie outside the powers of Congress").

The District Court suggested that the facts here are closer to *Dabit* than to *Troice*. *Northstar VII*, ER25-26. *Dabit* did not concern contract claims, but instead state "holder" claims alleging reliance on misrepresentations and omissions that "pose[d] a special risk of vexatious litigation" and went to the very heart of SLUSA preemption (state court fraud actions). 547 U.S. at 86. *Troice*, on the other hand, concerned efforts to hold professionals liable for misconduct involving a third party's investment fraud. 134 S. Ct. at 1065. This case, which simply seeks to enforce investors' rights under a contract, is akin to *Troice*. The concern raised in *Dabit*, that sustaining state holder claims predicated on securities fraud allegations would eviscerate SLUSA's objective in preempting state court fraud claims, is inapplicable here.

In May 2016, the U.S. Supreme Court in *Manning* reiterated that federal statutes divesting state courts of jurisdiction over traditionally state law claims must be narrowly construed:

> Out of respect for state courts, this Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires. We have reiterated the need to give "[d]ue regard [to] the rightful independence of state governments"—and more particularly, to the power of the States "to provide for the determination of controversies in their courts." Our decisions, as we once put the point, reflect a "deeply felt and traditional reluctance … to expand the jurisdiction of federal courts through a broad reading of jurisdictional statutes." That interpretive stance serves, among other things, to keep state-law actions like Manning's in state court, and thus to help maintain the constitutional balance between state and federal judiciaries.

33

136 S. Ct. at 1573 (internal citations omitted). Although not implicating SLUSA, *Manning* concerned the scope of Section 27 of the Securities Exchange Act of 1934, which provides *exclusive* federal court jurisdiction over any claim that "arises under" a federal law. 15 U.S.C. §78aa. The Supreme Court wrote specifically of its reticence to read broadly statutes (such as SLUSA) that provide exclusive jurisdiction in federal court:

> [W]hen a statute mandates, rather than permits, federal jurisdiction—thus depriving state courts of all ability to adjudicate certain claims—our reluctance to endorse "broad reading[s]," if anything, grows stronger. And that is especially so when, as here, the construction offered would place in federal court actions bringing only claims created by state law—even if those claims might raise federal issues. To be sure, a grant of exclusive federal jurisdiction, as Merrill Lynch reminds us, indicates that Congress wanted "greater uniformity of construction and more effective and expert application" of federal law than usual. But "greater" and "more" do not mean "total," and the critical question remains how far such a grant extends. In resolving that issue, we will not lightly read the statute to alter the usual constitutional balance, as it would by sending actions with all state-law claims to federal court just because a complaint references a federal duty.

*Manning*, 136 S. Ct. at 1573-74 (internal citations omitted); *see also id.* at 1574 ("[I]t is less troubling for a state court to consider such an issue [of federal law] than to lose all ability to adjudicate a suit raising only state-law causes of action"). As strongly as *Manning* was worded, it only concerned jurisdiction over traditional state law claims. SLUSA mandates both jurisdiction over and dismissal of state law claims, emphasizing the need that it be narrowly construed.

Given that the 4AC does not allege a misrepresentation or omission of material fact, the District Court's October 2015 and February 2016 Orders (*Northstar VI and VII*) were also erroneous in their overbroad employment of SLUSA.

### E. The District Court's Orders Are Inconsistent With This Court's Decisions in *Northstar V* And *Freeman*

The District Court's Orders are inconsistent with this Court's *Northstar V* opinion reinstating Northstar's claims for breach of contract, breach of fiduciary duty, third party breach of contract, and breach of the covenant of good faith and fair dealing. *Northstar V* did not find or even suggest that any of plaintiff's state law claims "hinges on" or "implicated" allegations of false statements or omissions. *See* pp. 25-26 above.

The District Court recognized that this Court had sustained plaintiff's common law non-fraud claims. *Northstar VI*, ER37-38. Yet, in finding that plaintiff's claims were preempted by SLUSA, the District Court accused plaintiff of unspecified "wordsmithing," and stated that "[s]aying something does not make it so." *Id.* ER59-60.[18] It is respectfully submitted, however, that the District

---

[18] In *Manning*, the Supreme Court specifically rejected defendant's entreaty that "a judge should go behind the face of a complaint to determine whether it is the product of 'artful pleading.'" 134 S. Ct. at 1575. "We have no idea how a court would make that judgment…. [The courts should avoid making] tortuous inquiry into artful pleading." *Id. Manning* suggests that the appropriate disposition of a case that fails to allege a necessary "factual predicate" to a state

Court's characterization of broken promises as "misrepresentations" also does not make it so. Indeed, in *Freeman*, this Court held that even fraud-like allegations of "systematic concealment" and "deceitful conduct" will not convert a garden-variety contract claim into a fraud claim. 704 F.3d at 1115. In *Freeman*, a class of policyholders alleged that Pacific Life had levied excessive fees at their expense in violation of the relevant policy terms. *Id.* at 1113-14. Pacific Life argued that the policyholders' claims were essentially for misrepresenting or omitting how the fees would be calculated and levied against the policies. *Id.* at 1114. Accordingly, Pacific Life argued, and the District Court accepted, that the policyholders' claims were precluded by SLUSA. *Id.* This Court reversed and, in doing so, expressly rejected the argument that because plaintiffs alleged that defendants violated a promise made to them, this necessarily meant that the defendants made a misrepresentation: "Plaintiffs allege that their insurer promised one thing and delivered another. That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission." *Id.* at 1118.

---

law contract claim is to dismiss the claim on the merits, rather than to theorize that unalleged allegations of falsity would implicate SLUSA. Here, of course, this Court has already sustained plaintiff's state law claims – negating any argument that plaintiff was guilty of relying on unalleged fraud allegations or other "artful pleading."

Ultimately, this Court in *Freeman* held that the only issue in dispute was whether the defendant had violated the terms of a variable annuity and not its *mens rea* with respect to the breach:

> Plaintiffs thus raise a dispute about the meaning of a key contract term, and the success of their claim will turn on whether they can convince the court or jury that theirs is the accepted meaning in the industry.… To succeed on this claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term.

*Id.* at 1115.

The core of the District Court's error below is in finding that the Schwab Advisor's contractual obligations in the IAA were "representations" when they were clearly "promises." Specifically, the District Court concluded in error that "[t]he [Schwab] Advisor [] represented to the [Schwab] Trust (and, ultimately, to shareholders) that the [Schwab] Advisor would do one thing, but ended up doing another…. [That is] a misrepresentation in the most classic sense." *Northstar VII*, ER17; *Northstar VI*, ER60. However, what the Schwab Advisor actually did in the IAA was to have made a "promise" that this Court has already found would support a third party breach of contract claim. *Northstar V*, ER235-36 ("The Schwab Trust entered into an *agreement* with the Schwab Advisor…. The Schwab Advisor expressly agreed to 'use the same skill and care in providing services as it would use in providing services to fiduciary accounts'…. The principal duty of the

Schwab Advisor … was to 'determine from time to time what securities and other investments [would] be purchased … by the [Fund]'…. Northstar alleges that the Schwab Advisor *breached the IAA* by managing the Fund in a manner inconsistent with the Fund's fundamental investment objectives, and that the shareholders may hold the Schwab Advisor liable *for such breach* as third-party beneficiaries of the IAA." (emphasis added)). Nowhere in the 4AC, or in this Court's discussion of the IAA (*Northstar V*, ER235-41), is there any mention of a misrepresentation or omission. Following this Court's decision in *Northstar V* and *Freeman*, however, the District Court should have concluded that the Schwab Advisor *promised* the Schwab Trust (and, ultimately, the Fund's shareholders) that the Schwab Advisor would do one thing, but ended up doing another. "*That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission*." *Freeman*, 704 F.3d at 1118 (emphasis added.).

The District Court's effort to distinguish *Freeman* is unpersuasive. *See Northstar VI*, ER60 n.7 and 61-62. As in *Freeman*, Northstar alleges here that defendants promised one thing (to operate the Fund using an indexing strategy) and "delivered another." In both cases, using the District Court's logic, defendants implicitly omitted the fact that they were breaching a contract and fiduciary duties. But, pursuant to *Freeman*, that does not convert a breach of contract claim to a

fraud claim. Again, "[t]hat's a straightforward contract claim." *Freeman*, 704 F.3d at 1118.

Moreover, if the implied failure to disclose a decision to breach a contract is always a fraud claim, there would be no such thing as a breach of contract claim and all covered class actions making any claim with respect to the sale of a security would be precluded by SLUSA because the defendant could always be accused of omitting disclosure of the underlying breach. As stated in *Freeman*:

> [W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract. Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they "really" involve deception or misrepresentation.

*Id.* at 1115-16 (internal citations and quotations omitted); *see also Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law").

Northstar, of course, recognizes that SLUSA applies whenever "deceptive statements or conduct form the gravamen or essence of the claim," and that plaintiffs "cannot avoid preclusion through artful pleading that removes the covered words but leaves in the covered concepts." *Freeman*, 704 F.3d at 1115. However, it is just *not* true, as was held by the District Court, that the essence of Northstar's numerous complaints is that defendants "made misrepresentations

about how investments in the Fund would be managed." As demonstrated above, what the District Court characterized as a "representation" and a breach giving rise to a fraud claim, was (as found by this Court in *Northstar V*) a "promise" and a "breach" giving rise to contract and breach of fiduciary duty claims. That this Court, in *Northstar V*, did not explicitly address the SLUSA issue does not diminish this Court's holding sustaining plaintiff's substantive claims without any reference to or reliance on allegations of misrepresentations or omissions.

The District Court in *Northstar VII* stated that a misrepresentation or omission need not be a "specific element" of a claim to invoke SLUSA so long as it forms the "factual predicate" for the claim. *Northstar VII*, ER25 (citing *Proctor*, 584 F.3d at 1222 n. 13). Elsewhere, the District Court cited several other cases for the proposition that the court must "review the gravamen behind the allegations in a complaint, rather than the exact words used." *Northstar VII*, ER16 (citing *Segal v. Fifth Third Bank*, 581 F.3d 305, 309-10, 311 (6th Cir. 2009) and *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005)). However, the District Court's reliance on the above-cited cases was also misplaced. *Proctor*, *Rowinski*, and *Segal* each found specific allegations of falsity that formed the "factual predicate" for state law claims. *See Proctor*, 584 F.3d at 1222 and n.13.[19]

---

[19] The *Proctor* court also found another claim not to be precluded under SLUSA as it did not involve misrepresentations. *Proctor*, 584 F.3d at 1223.

*See also Segal*, 581 F.3d at 309-10 (complaint alleged that defendant undertook a "planned corporate scheme" that "intended to (and did) lure grantors, testators, and others to designate Fifth Third as trustee," which is entirely unlike Northstar's allegations); *Rowinski*, 298 F.3d at 209-300 (allegations that defendant "artificially inflates" its client ratings and analysis, that it "issued materially misleading research reports," and that it "provided biased and misleading analysis that was intended to curry favor with Defendant's existing and potential investment banking clients," which are entirely unlike Northstar's allegations).

In any event, there are no such allegations of falsity that form the "factual predicate" of any of Northstar's claims. The need to "demonstrate that Defendants promised to invest the Fund's assets in accordance with certain specific objectives and that Defendants deviated from those objectives" (*see Northstar VII*, ER25) are simply factual predicates for Northstar's breach of contract claim, and is *not* an allegation of falsity. *See Freeman,* 704 F.3d at 1118.

In a further effort to distinguish this case from *Freeman*, the District Court found that whereas *Freeman* concerned the meaning of the term "insurance," this case concerns whether the Fund deviated from its investment objectives. *Northstar VII*, ER17-18. The difference between the two is irrelevant for SLUSA purposes. Both involve at their core a breach of contract. If defendants deviated from the Index, they committed a breach of contract and breach of fiduciary duty, not a

fraud. As in *Freeman*, where the defendants issued inflated billing statements with

respect to "insurance," the mere breach of contract does not give rise to a fraud

claim. Again, the District Court stated in *Northstar VII*: "Defendants promised to

manage the Fund one way, but ended up managing the Fund in a different way."

*Northstar VII*, ER18; *see also id.* at ER21 ("Defendants promised to manage the

Fund according to certain fundamental investment objectives, but did not actually

do so"); *id.* at ER25 ("In order to prove that Defendants breached their fiduciary

duties, Northstar must demonstrate that Defendants promised to invest the Fund's

assets in accordance with certain specific objectives and that Defendants deviated

from these objectives"). But, as this Court held in *Freema*n, the "promise" of "one

thing" and the "delivery" or "another" is "a straightforward contract claim that

doesn't rest on misrepresentation or fraudulent omission." 704 F.3d at 1118.

### F. The Other Cases Cited By The District Court Are Distinguishable Or Otherwise Inapposite

The District Court's reliance on *Hampton v. Pacific Investment Management

Co., LLC,* No. SACV 15-00131-CJC(JCGx), 2015 WL 7292128 (C.D. Cal. Nov. 2,

2015) was also misguided. *See Northstar VII*, ER18-19. First, the decision is

currently on appeal to this Court (Dkt No. 15-56841) and is therefore of

questionable precedential value. Second, *Hampton* had relied on *Northstar VI* in

dismissing a claim based on SLUSA. *Id.* at *3-6. Thus, the District Court

circularly relied on itself in following *Hampton*. Finally, *Hampton* concerned a

"promise" in a prospectus with respect to investments in emerging market
countries (*id.* at *1), not a contract with respect to a fundamental investment
objective formed by a Proxy Statement and shareholder vote, where the Proxy
Statement promised that the fundamental investment objective would only be
changed by subsequent shareholder vote.  In *Hampton*, in contrast to the instant
action, no court, no less *this* Court, had already determined that the promise in the
Prospectus formed the terms of a binding contract.  Furthermore, because *Hampton*
did not concern a proxy statement or shareholder vote, it could not be saved by the
Delaware carve-out, unlike here.  *See* discussion at pp. 48-52, below.[20]

The District Court's discussion of *Tuttle v. Sky Bell Asset Management, LLC*
*("Tuttle II")*, No. C 10-03588 WHA, 2011 WL 208060 (N.D. Cal. Jan. 21, 2011)
fares no better.  *See Northstar VI*, ER62-63.  *Tuttle II* involved facts almost
identical to this case where the plaintiff alleged that the defendants breached a
fiduciary duty to invest assets in "massively diversified investments;"

> Whereas the original complaint focused on the "illusion" that the
> investments were being handled by knowledgeable staff, the amended
> complaint emphasizes that defendants had an obligation to act with

---

[20] Northstar submits that the real issue in *Hampton* is whether the statement
with respect to emerging market investments in the prospectus was sufficient to
establish a contract between investors and the investment fund.  If the allegations
were sufficient to establish a contract, the *Hampton* complaint should have been
sustained.  If the allegations were insufficient, the claim should have been
dismissed for failure to plead a claim for relief.  Either way, the complaint in
*Hampton* did not implicate SLUSA.

care and failed to do so…. Any remaining references to misrepresentations or omissions can be properly described as extraneous details.

*Tuttle II*, 2011 WL 208060, at *2. In *Tuttle II*, Judge Alsup, as he had in *In re Charles Schwab*, 257 F.R.D. at 551 (a case that is also on point), held that those allegations did not implicate SLUSA as "the state claims … are not predicated upon a misrepresentation in connection with a securities transaction." *Tuttle II*, 2011 WL 208060 at *2.

Similarly, in *Stoody-Broser v. Bank of America*, *N.A.*, No. C 08-02705-JSW, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009), Judge White had dismissed the plaintiff's complaint for breach of fiduciary duty against a trust administrator without leave to amend after finding that the plaintiff had "framed the pleading in an effort to avoid SLUSA preemption" and that "the essence of the complaint is that Defendants misrepresented and omitted material facts" relating to the fund's investments. *Id.* at *2-4. This Court directed the District Court to grant the plaintiff leave to amend, reasoning that claims on behalf of a trust's beneficiaries for breach of fiduciary duty do not implicate SLUSA so long as the complaint does not allege misrepresentations, omissions, or fraudulent practices coincidental to the violation. *Stoody-Broser v. Bank of Am., N.A.*, 442 F. App'x 247, 249 (9th Cir. 2011). On remand, Judge White denied the defendants' renewed motion to dismiss the amended complaint, holding that "where the original complaint alleged that

44

Plaintiff and other trust beneficiaries similarly situated were misled about the investment of their trust assets, the amended complaint alleges merely that Defendants fail to act with due care under their fiduciary obligations to do so." *Stoody-Broser v. Bank of Am., N.A.,* 2012 WL 1657187, at *4 (N.D. Cal. May 10, 2012).

The District Court sought to distinguish *Tuttle II* and *Stoody-Broser* on grounds that in those cases the plaintiffs had withdrawn their fraud claim, whereas here "there has been no such change from fraud to negligence." *Northstar VI*, ER62-64. In fact, here, Northstar has never alleged fraud, so there was no fraud claim to withdraw. Rather, the 2AC, 3AC, and 4AC each contained the same claims (breach of fiduciary duty) that were upheld as properly stated in *Tuttle II* and *Stoody-Broser. See also Kingate,* 784 F.3d at 132, 142, 151-52 (finding that claims for "breach of contractual, fiduciary, or tort-based duties owed to plaintiffs to provide competent management" (among other things) "would not require any showing of false conduct on the part of Defendants," and that "such allegations are not precluded by SLUSA");[21] *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ.

---

[21] *Kingate* (like *Freeman*) directed trial courts to identify which allegations are "necessary" to the claims and which are "inessential" or "extraneous." *Kingate*, 784 F.3d at 132, 142. "State law claims that do not depend on false conduct are not within the scope of SLUSA, even if the complaint includes peripheral, inessential mentions of false conduct." *Id.* at 132.

118(VM), 2015 WL 4610406, at *8-10, *14-17 (S.D.N.Y. July 29, 2015) (sustaining claims of negligence, breach of fiduciary duty, and gross negligence over defendants' SLUSA objections).

The District Court's reliance on *Dudek v. Prudential Securities, Inc.,* 295 F.3d 875, 880 (8th Cir. 2002) is similarly erroneous. *See Northstar VI*, ER61. *Dudek* did not concern a contract between the parties. Rather, the plaintiff alleged claims based on the sale of variable annuities that were "inherently unsuitable and inappropriate." 295 F.3d at 879. The Eighth Circuit appropriately found that the essence of "both complaints is the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts." *Id.* at 880. Here, in contrast, Northstar alleges the existence of a contract that defendants breached, and does not make any allegations of misrepresentations or omissions.

## III. EVEN IF SLUSA APPLIED, THIS ACTION WOULD STLL BE PRESERVED BY THE "DELAWARE CARVE-OUT"

Even were SLUSA found to apply to the allegations in the 4AC, all but two of Northstar's claims fall within the "Delaware carve-out" to SLUSA preemption and would be "preserved" under the statute.[22] In fact, defendants conceded in their

---

[22] Northstar's third party beneficiary claims (claims 5 and 12) are based on the IAA between the Schwab Trust and the Schwab Advisor, which is governed by California law. Those claims are not predicated on the law of Massachusetts, where the Schwab Trust is organized. Accordingly, the Delaware carve-out is

motion to dismiss the 3AC that the Delaware carve-out applied to plaintiff's fiduciary duty claims.  *See* pp. 14, above (citing ER270 n.5).

### A.    The Delaware Carve-Out

The "Delaware carve-out" is "a term used to describe an exception to SLUSA preemption if such a cause of action is available under the law of the state that had chartered or organized the entity issuing the securities."  *Northstar V*, ER209.  Under the carve-out, class actions that involve claims of misrepresentation or omission are "preserved," *i.e.*, not subject to SLUSA dismissal, provided they are (i) "based upon the statutory or common law of the State in which the issuer is … organized" and (ii) constitute "permissible actions" defined by the statute.  15 U.S.C. §77p(d)(1)(A).  "Permissible actions" include a covered class action that "involves:"

> **(ii)** *any* recommendation, position, or other communication with respect to the sale of securities of the issuer that—
>
> > **(I)**    is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and
> >
> > **(II)**   concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, *or* exercising dissenters' or appraisal rights.

---

unavailable for such claims.  Nevertheless, as with *all* of Northstar's claims, the third party beneficiary claims have nothing to do with fraudulent or deceptive conduct and do not implicate SLUSA.  Thus, the carve-out need not be invoked to "preserve" such claims from SLUSA preclusion.

15 U.S.C. §77p(d)(1)(B)(ii) (emphasis added).[23]

**B.    Northstar's Claims Are Based On The Law Of The State Of The Schwab Trust's Organization, And This Is A Permissible Action Because It "Involves" A Shareholder Vote.**

There is no dispute that Northstar's claims are "based upon the statutory and common law" of Massachusetts, "the State in which" the Schwab Trust is organized.  *See Northstar VI*, ER66 ("Because Massachusetts law applies, and because these breach of contract claims are being brought against the Trust, a Massachusetts entity, the Court must now decide whether these claims fall within the Delaware carve-out").  Further, Northstar's claims "involve" the Proxy Statement, a "recommendation, position, or other communication with respect to the sale of securities" of the Schwab Trust, and the Proxy Statement was made by defendants on behalf of the Schwab Trust.  *See Northstar VI*, ER67 ("The [District] Court acknowledges that the contract between the [Schwab] Trust and shareholders, and the subsequent communications between Defendants and shareholders, may have constituted a position or communication for purposes of 15 U.S.C. §77p(d)(1)(B)(ii)").

---

[23] Plaintiff does not rely on subpart (i), under which covered class actions that involve "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to existing holders of equity securities of the issuer" are also preserved by the carve-out.  *See* 15 U.S.C. §77p(d)(1)(B)(i).

The District Court's ruling that the Delaware carve-out did not apply to Northstar's claims was confined to the second permissible action requirement that the "recommendation, position, or other communication with respect to the sale of securities" (the Proxy Statement) "concern decisions of equity holders" (decisions of Fund shareholders) "with respect to voting their securities." *Northstar VI*, ER67; *see also* ER128-29, ¶15. Specifically, the Court held that Northstar and other shareholders "were not induced by misrepresentations to vote one way or another." *Northstar VI*, ER68-69.

The District Court's analysis was erroneous. The statute says nothing about the need for the communication or recommendation "concerning" voting to involve a misrepresentation or omission. Rather, under the plain language of the statute, for the Delaware carve-out to apply, the claim need only "involve[]" or "concern[]"communications "with respect to" shareholder voting. 15 U.S.C. §77p(d)(1)(B). Here, all of plaintiff's claims derive from the July 25, 1997 Proxy Statement and "concern" "communications" "with respect to" shareholder voting. It is those communications and the subsequent shareholder vote that form the core of plaintiff's contract and breach of fiduciary duty claims.

The Delaware carve-out has been broadly construed. For example, in *City of Ann Arbor Employees' Retirement System v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, *6 (N.D. Cal. March 9, 2007), the court found that *Dabit* "is of

limited support … as … it does not directly address the scope of the Delaware carve-out" and that, for the purposes of the carve-out, the issuer's recommendation with respect to a shareholder vote approving an equity incentive plan need only be "more than tangibly related" to the subsequent issuance of employee stock options:

> [T]here is a high degree of proximity in the causal chain. Defendants would not need to make any further communications with shareholders before granting the options: no further shareholder approval is necessary once the authorization was obtained. The proxy statement was the last necessary "communication with respect to the sale of securities" which concerns "decision of such equity holders with respect to voting their securities."

*Id.* (internal citations omitted); *see also In re Metlife Demutualization Litig.*, No. CV 00-2258TCP-AKT, 2006 WL 2524196, at *6 (E.D.N.Y. Aug. 28, 2006) (finding "[t]he definition of 'involve' [in the Delaware carve-out] is quite broad" and concluding that the carve-out preserved state law claims related to an insurer's demutualization program); *Lewis v. Termeer*, 445 F. Supp. 2d 366, 372-73 (S.D.N.Y. 2006) (holding that "involves" is sufficiently broad to include publicly traded securities").

The District Court and defendants sought to distinguish the above cases by pointing out that they did involve misrepresentations that "induce[d] voters to vote in a certain way." *Northstar VI*, ER69. But, again, the statute is devoid of any reference to either misrepresentation, or inducement to vote or take other action.

50

For the same reason and others, the District Court's reliance on *Crimi v. Barnholt,* No. C 08–02249 CRB, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) was misplaced. *See Northstar VI*, ER67-68. In *Crimi*, the plaintiff asserted that he continued to hold shares in KLA-Tencor Corp. in reliance on false financial information in a proxy statement, and did not challenge the defendants' contention that those claims did not implicate plaintiff's right to vote or the Delaware carve-out. *Id.* at *3. Those claims were appropriately dismissed because they were not premised on the right to vote. However, with respect to plaintiff's voting claim, the court reached a contrary conclusion, holding that the misrepresentations in the proxy statement implicated the plaintiffs' right to vote with respect to executive compensation, a matter squarely within the carve-out. *Id.* at *5. In the case at bar, similarly, plaintiff claims that the Fund's deviation from its fundamental investment policy implicated investors' right to vote to control the Fund's fundamental investment policies (ER124-25, ¶4) and thus is akin to that aspect of *Crimi* that involved voting rights.

Defendants also protested below that the voting prong cannot be invoked because "no vote occurred." ER121. This argument, for which defendants provided no authority, is also defective. A vote *did* take place pursuant to the Proxy Statement, *i.e.*, the vote under which shareholders approved the imposition of the Fund's fundamental investment policies, and this action "involves" that

51

shareholder vote. ER162, ¶¶179-83. The Schwab Trust "continued to offer shares in the Fund pursuant to the terms of a contract" created by that shareholder vote. ER162-63, ¶¶179-86. *See Northstar V*, ER214-15 ("Northstar's breach of contract cause of action rests on the deviation by defendants from two fundamental investment objectives, which required a shareholder vote to be changed, without first obtaining shareholder approval. Until the fundamental investment objectives were amended by shareholder vote, the investors had a contractual right to have the Fund managed in accordance with those objectives" (citing *Lapidus v. Hecht,* 232 F.3d 679, 681-83 (9th Cir. 2000))); *see also Northstar V*, ER226-27.

Leaving aside that Northstar's claims do not involve or concern any falsity, applying the carve-out would ensure that investors, such as plaintiff, could enforce contracts created pursuant to Proxy Statement by shareholder vote. A contrary holding would allow corporations and business trusts to breach agreements with investors with impunity (so long as the falsity succeeded rather than preceded the shareholder vote).

### C. Defendants Are Foreclosed From Arguing That Northstar's Fiduciary Duty Claims Are Preempted By SLUSA

Finally, defendants are judicially estopped from arguing, or alternatively have waived the argument, that the Delaware carve-out does not apply to "save" the breach of fiduciary duty claims, given their affirmative concession that Northstar had "avoided preemption for its fiduciary duty claims by asserting them

under Massachusetts law and coming within the 'Delaware carve-out' to SLUSA." ER270, n.5.

The District Court failed to address these issues in the Orders. It held only that because defendants failed to assert the SLUSA defense in their earlier motions to dismiss Northstar's breach of fiduciary duty claims, they were barred from raising it in a Rule 12(b)(6) motion but could relitigate the issue pursuant to a Rule 12(c) motion for judgment on the pleadings. *Northstar VI*, ER41-43. The matter, however, was not lost on this Court. While it remanded the SLUSA issue to the District Court, it left little doubt that it viewed defendants as having waived the issue: "Indeed, the Schwab defendants *conceded* in their motion to dismiss the [3AC] that 'Northstar avoided SLUSA preemption for its fiduciary breach claims by asserting them under Massachusetts law and coming within the Delaware carve-out.'" *Northstar V*, ER209 (emphasis added).

Defendants are thus foreclosed from now arguing that SLUSA precludes Northstar's breach of fiduciary duty claims. The doctrine of judicial estoppel precludes parties from "changing positions according to the exigencies of the moment." *ACLU v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)); *see also Hannon v. Wells Fargo Bank, N.A.*, No. 14-CV-05381-LHK, 2015 WL 4776305, at *6 (N.D. Cal. Aug. 13, 2015).

Alternatively, defendants waived the argument. *See Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (S.D.N.Y. 2007) (plaintiff waived carve-out argument by first raising it in reply brief); *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 894 (7th Cir. 2012) (defendants failed to file a motion to dismiss under SLUSA (and thus forfeited the defense), presumably because plaintiff would have been able to avail herself of the carve-out).

## CONCLUSION

As the 4AC contains no allegations of misrepresentations and omissions, it implicates no issues with respect to SLUSA. Even if it did, all of Northstar's claims besides its third party beneficiary claims would be "preserved" by the Delaware carve-out.

Unless the Orders below are reversed, investors in mutual funds and other public companies would, as a matter of law, never be able to enforce agreements with issuers because the breach of those agreements could always give rise to false statements or omissions that could implicate SLUSA when the business entity fails to disclose the breach, notwithstanding that the claims themselves are garden variety breach of contract and breach of fiduciary duty claims.

Dated: June 6, 2016

       /s/ Robert C. Finkel
Robert C. Finkel (NY RF 2373)
WOLF POPPER LLP
845 Third Avenue

New York, NY 10022
Telephone: (212) 759-4600

Joseph J. Tabacco, Jr. (75484)
Christopher T. Heffelfinger (118058)
BERMAN DEVALERIO
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200

Marc J. Gross
GREENBAUM ROWE SMITH &
DAVIS LLP
75 Livingston Street, Suite 301
Roseland, NJ 07068
Telephone: (973) 535-1600

*Attorneys for Plaintiff-Appellant*
*Northstar Financial Advisors, Inc.*

## STATEMENT OF RELATED CASES PURSUANT TO
## NINTH CIRCUIT RULE 28-2.6

There are no directly related proceedings. To plaintiff's knowledge, there are three appeals pending before this Court concerning similar SLUSA preclusion issues to those appealed here. *Hampton v. Pacific Investment Management Co. LLC*, No. 15-56841 is an appeal from an order of the Central District of California dismissing claims for breach of contract, breach of trust, and breach of the covenant of good faith and fair dealing arising from a mutual fund exceeding investment restrictions referenced in prospectuses. *Fleming v. The Charles Schwab Corp.*, No. 16-15179 and *Lim v. Charles Schwab & Co., Inc.*, No. 16-15189 are two appeals from an order of the Northern District of California dismissing claims for, among other things, breach of contract and breach of fiduciary duty arising from Schwab entities stating they would route orders to a venue that would execute the trade at the best price possible for the customer, when they in fact entered into a contract to route all orders to a single venue, UBS Securities LLC.

In none of those cases did a court, no less this Court, find that the plaintiff had adequately pled a breach of contract claim (*see Northstar V*, ER210-22) and none of those cases concern a contractual commitment made pursuant to a shareholder vote on a shareholder proposal contained in a Proxy Statement, which

was only changeable pursuant to a subsequent majority shareholder vote. Rather, the other cases on appeal concern statements made in prospectuses.

Because this case presents the clearest of the factual patterns in the pending cases and because this case is further along procedurally than the other cases (with this Court already sustaining Northstar's substantive claims and plaintiff having filed a motion for class certification), Northstar urges that this case be argued first or at least in unison with the other SLUSA cases.

Dated: June 6, 2016

   /s/ Robert C. Finkel

Robert C. Finkel (NY RF 2373)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

*Attorney for Plaintiff-Appellant Northstar Financial Advisors, Inc.*

## CERTIFICATE OF COMPLIANCE PURSUANT TO
## FED. R. APP. P. 32(A)(7)

1. This brief complies with the type-volume limitation of FED. R. APP. P.

32(a)(7)(B) because:

    __X__ this brief contains 12,740 words, excluding the parts of the brief
exempted by FED. R. APP. P. 32(a)(7)(B)(iii) and Fifth Circuit Rule
32.2, *or*

    _____ this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by FED. R.
APP. P. 32(a)(7)(B)(iii) and Fifth Circuit Rule 32.2.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5)

and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    __X__ this brief has been prepared in a proportionally spaced typeface using
Microsoft Office Word 2013 in Time New Roman 14 point font, or

    _____ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

    Dated: June 6, 2016

    ___/s/ Robert C. Finkel_____
Robert C. Finkel (NY RF 2373)
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600

*Attorney for Plaintiff-Appellant Northstar Financial Advisors, Inc.*

58

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/ Maryna Sapyelkina
Appellate Paralegal
COUNSEL PRESS LLC