No. 16-15303

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

NORTHSTAR FINANCIAL ADVISORS, INC.,
on behalf of itself and all others similarly situated,

*Plaintiff-Appellant,*

v.

SCHWAB INVESTMENTS; MARIANN BYERWALTER; DONALD F.
DORWARD; WILLIAM A. HASLER; ROBERT G. HOLMES; GERALD B.
SMITH; DONALD R. STEPHENS; MICHAEL W. WILSEY; CHARLES R.
SCHWAB; RANDALL W. MERK; JOSEPH H. WENDER; JOHN F. COGAN;
CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of California
No. 5:08-CV-04119-LHK
Hon. Lucy H. Koh, District Judge

_____

## BRIEF OF DEFENDANTS-APPELLEES

_____

DECHERT LLP
Matthew L. Larrabee
Joshua D.N. Hess
Brian C. Raphel
One Bush Street, Suite 1600
San Francisco, California 94104
[*Additional counsel on signature page*]

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(1), Defendants-Appellees Schwab Investments and Charles Schwab Investment Management, Inc. ("CSIM") hereby state that The Charles Schwab Corporation is the parent corporation of CSIM. The Charles Schwab Corporation is a publicly traded company. No publicly held corporation owns 10% or more of the stock of The Charles Schwab Corporation. Schwab Investments is a Massachusetts Business Trust that is owned beneficially by its public shareholders. No corporation owns 10% or more of the beneficial interests of the trust.

All other Defendants are not publicly traded and have no corporate parent and no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................3

STATEMENT OF THE CASE.....................................................................3

    A.    Statement of Facts ...................................................................3

          1.    The Gravamen Of Plaintiff's Claims Sounds In Fraud ............3

          2.    Plaintiff First Recommended That Its Clients Invest In The Fund In 2002, Based On False Assumptions And Woefully Inadequate Due Diligence.........................................5

          3.    Plaintiff Does Not Allege Any Wrongdoing Prior To 2007......................................................................................6

    B.    Procedural History....................................................................8

SUMMARY OF ARGUMENT ...................................................................14

STANDARD OF REVIEW .......................................................................16

ARGUMENT ........................................................................................17

    I.    SLUSA Bars State-Law Claims, Like Those Here, Based On Alleged Misrepresentations In Connection With The Purchase Or Sale Of A Covered Security.........................................17

          A.    The Purpose Of SLUSA Is To Preclude Even Well-Pleaded State-Law Causes Of Action For Conduct Covered By The Anti-Falsity Provisions Of The Federal Securities Laws .......................................................17

          B.    SLUSA Preclusion Cannot Be Averted Through "Artful Pleading".................................................................19

    II.    The District Court Correctly Determined That All Of Plaintiff's Claims Are Precluded Under SLUSA.................................23

          A.    The Gravamen Of Plaintiff's Claims Has Always Rested Upon Alleged Misrepresentations From 2007 Through 2009.................................................................24

          B.    Plaintiff's Claims Are Not And Cannot Be Based Exclusively On The 1997 Proxy.............................................28

    III.    Plaintiff's Alternative Arguments Are Also Legally Baseless .........33

# TABLE OF CONTENTS
## (continued)

**Page**

A. There Is No "Breach Of Contract" Exception To SLUSA......33

B. Plaintiff's Distinction Between "Promises" And "Representations" Is Illusory And Unworkable ......................34

C. Affirming The District Court's Ruling Does Not Deprive Plaintiff Of Any Remedy To Which It Was Entitled ............37

IV. The District Court Correctly Determined That The Delaware Carve-Out Does Not Apply In The Absence Of A Shareholder Vote ......................................................................40

V. Plaintiff's Efforts To Assert Judicial Estoppel And Waiver Are Meritless ......................................................................46

CONCLUSION ......................................................................49

## <u>TABLE OF AUTHORITIES</u>

CASES

*Campbell v. Am. Int'l Grp., Inc.*,
   760 F.3d 62 (D.C. Cir. 2014)...............................................................41

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987).............................................................................19

*Chadbourne & Parke LLP v. Troice*,
   134 S. Ct. 1058 (2014)..................................................................19, 34

*City of Ann Arbor Employees' Retirement System v. Gecht*,
   2007 WL 760568 (N.D. Cal. Mar. 9, 2007) ........................................46

*Crimi v. Barnholt*,
   2008 WL 4287566 (N.D. Cal. Sept. 17, 2008)............................44, 45

*Daniels v. Morgan Asset Mgmt., Inc.*,
   497 F. App'x 548 (6th Cir. 2012) ........................................................33

*Dudek v. Prudential Sec., Inc.*,
   295 F.3d 875 (8th Cir. 2002) ..............................................................24

*E.E.O.C. v. Kamehameha Sch.*,
   990 F.2d 458 (9th Cir. 1993) ..............................................................46

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002) ............................................................18

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*,
   463 U.S. 1 (1983)..........................................................................19, 23

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
   704 F.3d 1110 (9th Cir. 2013) ...................................................*passim*

*Fried v. Stiefel Labs., Inc.*,
   814 F.3d 1288 (11th Cir. 2016) ..........................................................30

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ........................................................16, 47

*Hampton v. Pacific Investment Management Company, LLC*,
    146 F. Supp. 3d 1207 (C.D. Cal. 2015) ......................................................*passim*

*Holtz v. J.P. Morgan Securities LLC*,
    2013 WL 3240181 (N.D. Ill. June 26, 2013) ....................................................27

*In re BP p.l.c. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ..............................................................29

*In re Kingate Mgmt. Ltd. Litig.*,
    784 F.3d 128 (2d Cir. 2015) ..........................................................21, 22, 33, 39

*In re Lord Abbott Mut. Funds Fee Litig.*,
    553 F.3d 248 (3d Cir. 2009) ............................................................................38

*In re Metlife Demutualization Litigation*,
    2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006) .................................................46

*In re TCW/DW N. Am. Gov't Income Tr. Sec. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996) ..................................................................30

*Jorling v. Anthem, Inc.*,
    836 F. Supp. 2d 821 (S.D. Ind. 2011) ..............................................................45

*Lewis v. Termeer*,
    445 F. Supp. 2d 366 (S.D.N.Y. 2006) .............................................................46

*Lim v. Charles Schwab & Co., Inc.*,
    2015 WL 7996475 (N.D. Cal. 2015) ..........................................................27, 28

*Madden v. Cowen & Co.*,
    576 F.3d 957 (9th Cir. 2009 ) ....................................................................41, 42

*Massey v. Helman*,
    196 F.3d 727 (7th Cir. 1999) ...........................................................................48

*Mattel, Inc. v. MGA Entm't, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) .............................................................48

*Merrill Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986)..........................................................................................23

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007) ................................................................31

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   547 U.S. 71 (2006)................................................................17, 18, 32

*Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Manning*,
   136 S. Ct. 1562 (2016)..........................................................22, 23, 24

*Miller v. Nationwide Life Ins. Co.*,
   391 F.3d 698 (5th Cir. 2004) ............................................................34

*New Hampshire v. Maine*,
   532 U.S. 742 (2001).........................................................................49

*Novato Fire Prot. Dist. v. U.S.*,
   181 F.3d 1135 (9th Cir. 1999) ....................................................16, 47

*Proctor v. Vishay Intertechnology Inc.*,
   584 F.3d 1208 (9th Cir. 2009) ............................................19, 20, 21

*Reese v. BP Expl. (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) .......................................................29, 35

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   292 F.3d 1334 (11th Cir. 2002) ........................................................39

*Rowinski v. Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005) .....................................................*passim*

*SEC v. Manor Nursing Ctrs., Inc.*,
   458 F.2d 1082 (2d Cir. 1972) ...........................................................30

*Segal v. Fifth Third Bank, N.A.*,
   581 F.3d 305 (6th Cir. 2009) ............................................................21

*Stoody-Broser v. Bank of Am.*,
   442 F. App'x 247 (9th Cir. 2011) .....................................................21

*Suydam v. Reed Stenhouse of Washington, Inc.*,
   820 F.2d 1506 (9th Cir. 1987) ..........................................................31

*United States v. Dillard*,
  101 F.2d 829 (2d Cir. 1938) ................................................................29

*United States v. Tucor Int'l Inc.*,
  238 F.3d 1171 (9th Cir. 2001) ...........................................................47

*Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*
  532 U.S. 588 (2001)............................................................................34

*Zola v. TD Ameritrade*,
  2016 WL 1170979 (D. Neb. Mar. 23, 2016) ......................................37

## STATUTES

15 U.S.C. § 77p...........................................................................41, 43, 45

15 U.S.C. § 77k...............................................................................30, 40

15 U.S.C. § 77m...................................................................................40

15 U.S.C. § 77l.....................................................................................30

15 U.S.C. § 77r.....................................................................................18

15 U.S.C. § 78bb..................................................................................18

28 U.S.C. § 1331..................................................................................23

## OTHER AUTHORITIES

Black's Law Dictionary (19th ed. 2014) ................................................35

## INTRODUCTION

This is a putative class action brought on behalf of investors in the Schwab Total Bond Market Fund (the "Fund") seeking damages arising from allegedly false statements in Fund prospectuses issued from August 2007 through February 2009. These claims are unquestionably securities fraud claims and should have been filed under the federal securities laws, if at all. Yet, in order to avoid the substantive and procedural restrictions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and dismissal under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Plaintiff-Appellant Northstar Financial Advisors, Inc. ("Plaintiff") made the tactical decision to style its claims as purported "garden-variety state law claim[s]." Brief for Plaintiff-Appellant ("Op. Br.") at 20. But such gamesmanship is not permitted under SLUSA and the District Court below properly dismissed Plaintiff's claims with prejudice, finding that Plaintiff's artful pleading in five separate complaints filed throughout the past eight years had not changed the true gravamen of Plaintiff's claims. As the District Court held, Plaintiff's quintet of complaints has consistently presented securities misrepresentation claims "in the most classic sense." (ER 60).

In this appeal, Plaintiff continues to obscure the true nature of its claims by arguing that this case is about "promises" made in 1997—nearly a decade before the first relevant investment in the Fund—about how the Fund would invest its assets.

Op. Br. at 31. These purported "promises," now nearly two decades old, are a red herring. Plaintiff actually alleges a classic misrepresentation claim: The Fund allegedly failed to follow the investment practices disclosed in its Prospectuses from August 2007 through February 2009, and shareholders were thereby injured by purchasing or holding shares throughout this time period while the Prospectuses concealed the true nature of the Fund. The *only* wrongdoing alleged in this case is the purported misrepresentations made between August 2007 and February 2009; Plaintiff's concession that there was no misrepresentation ten years earlier is thus irrelevant.

Bereft of any cognizable legal argument to present to this Court, Plaintiff protests that SLUSA preclusion will deprive it of any remedy. Not so. Plaintiff could have filed these claims on behalf of a class under the federal securities laws or filed an individual complaint alleging precisely the claims at issue here. Plaintiff also could have pursued any remedy to which it believes it is entitled in arbitration. None of these options would have been precluded by SLUSA, which precludes only the tactics Plaintiff has employed. The truth is that Plaintiff knowingly declined to take advantage of these options for redress, seeking instead to skirt the limitations imposed by applicable federal statutes in an effort to gain perceived tactical advantages. This ploy properly ended as Congress intended—in dismissal. Accordingly, the District Court's orders should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Did the District Court properly dismiss state-law claims as precluded by SLUSA when the gravamen of these claims is that from August 2007 through February 2009 a mutual fund's prospectuses materially misrepresented the manner in which the fund's assets were being invested?

2.     Did the District Court properly find that Plaintiff's claims were not saved from SLUSA preclusion under the "Delaware Carve-Out" where no alleged misrepresentation involved a shareholder vote and no shareholder vote occurred at all from August 2007 through February 2009?

## STATEMENT OF THE CASE

### A.     Statement of Facts

#### 1.     The Gravamen Of Plaintiff's Claims Sounds In Fraud.

Throughout all five of its complaints, Plaintiff has asserted claims on behalf of shareholders in the Fund who purchased or held shares from August 2007 through February 2009, which Plaintiff defines as the "Breach Period."  (ER 124, 126). Plaintiff alleges that, throughout the Breach Period, Defendants[1] represented in Fund

---

[1]    "Defendants" refers to the Defendants-Appellees, Schwab Investments, Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender, John F. Cogan, and Charles Schwab Investment

-3-

Prospectuses and other public filings that the Fund would be managed conservatively and passively by investing in the same securities as the Lehman Brothers U.S. Aggregate Bond Index (the "Index"), pursuant to its investment objective to "seek to track the investment results" of the Index. (ER124-25, 163). Plaintiff further alleges that the Fund represented that it would not invest more than 25% of its assets in any single industry. (ER 125) Plaintiff claims these representations were untrue during the Breach Period (but not before) because, during this time, the Fund actively invested greater than 25% of its assets in collateralized mortgage obligations ("CMOs"), which were not included in the Index and were, according to Plaintiff, part of a single "industry." *Id.* Although many shareholders suffered no losses and actually profited on their investments in the Fund, Plaintiff claims that shareholders were harmed during the Breach Period by the Fund's investment in CMOs because, in hindsight, they now believe they did not receive the same returns they could have obtained if the Fund had followed its disclosed investment approach. (ER 125, 148).

Management, Inc. In an order that Plaintiff has not appealed, however, the breach of fiduciary duty claims against Schwab Investments have been dismissed.

2.    **Plaintiff First Recommended That Its Clients Invest In The Fund In 2002, Based On False Assumptions And Woefully Inadequate Due Diligence.**

Plaintiff describes itself as a "financial planning firm serving both institutional and individual clients." (ER 130). Plaintiff, itself, never purchased a single share in the Fund and only began investing its clients in the Fund in 2002. As a result, Plaintiff has standing in this case only via an assignment from one of its clients, Henry Holz, who is also the brother-in-law of Plaintiff's principal, Richard Berse.[2] Berse did not invest Holz in the Fund until February 2007. (ER 131). Berse made these investments in the Fund based on the mistaken assumption that it was a passively managed index fund, holding substantially the same assets as the Index, a mistake he made without conducting any reasonable due diligence on the Fund. (Supp. ER 4-7).[3] Berse concedes that he did not read "any further than the first

---

[2]    Although this Court has ruled that Plaintiff's failure to obtain the alleged assignment before filing this lawsuit did not deny Plaintiff standing (ER 205), recent discovery has confirmed that the assignment is substantively invalid for several reasons that have not yet been addressed by this Court or the District Court, including a lack of consideration and a failure of the contracting parties to reach mutual agreement. Defendants reserve all rights to continue to contest the validity of the assignment and Plaintiff's standing, if necessary.

[3]    Berse's sworn testimony included numerous admissions that were summarized and submitted to the District Court in Defendants' Opposition to Class Certification, which the District Court cited in granting one of the orders that Plaintiff now appeals. (ER 12). Accordingly, Defendants submit the relevant portions of Defendants' Opposition to Class Certification in their Supplemental Excerpts of Record ("Supp. ER" 1-9), as well as the excerpted portions of Berse's testimony cited therein. (Supp. ER 14-42). Although consideration of these

-5-

sentence" of the Prospectuses, did not read any of the Fund's other public filings, and paid "a lot less" attention to this investment than he normally would with other investments. (Supp. ER 5). As a result of his failure to read more than a single sentence of the Fund's disclosures, Berse was unaware that this Fund was *not* the type of Fund in which he hoped to invest his clients, *viz.*, a passively managed index fund.[4]

### 3. Plaintiff Does Not Allege Any Wrongdoing Prior To 2007.

In 1997, roughly five years before Berse first invested any of his clients in the Fund, the Fund underwent a total restructuring pursuant to shareholder vote. (ER 131, 142-43). As set forth in the Fund's July 25, 1997 Proxy Statement (the "1997 Proxy"), the Fund proposed changing its name from the Schwab Long-Term Government Bond Fund to the Total Bond Market Index Fund. (ER 142). It proposed a new fundamental investment objective: to "attempt to provide a high level of current income consistent with preservation of capital by seeking to track

---

materials is not necessary to conclude that each of Plaintiff's claims are precluded under SLUSA, these sworn admissions provide useful supporting context and directly contradict arguments made by Plaintiff's counsel in this appeal regarding the nature of Plaintiff's claims.

[4] Berse has tried to excuse his mistake by taking the position that the "first sentence" of the Fund's Prospectuses—the only portion he chose to read—was "somewhat misleading" and caused him to believe that the Fund was a passively managed index fund. (Supp. ER 5). This sworn testimony is also contrary to his counsel's position that there are no misrepresentations at issue here.

the investment results" of the Index. (ER 143). It also stated that the Fund would "not concentrate investments in a particular industry or group of industries." (ER 144, 387).

Holz, who was not a Fund shareholder until 2007, did not receive the 1997 Proxy let alone participate in the vote on it. (ER 131). Indeed, Plaintiff does not allege that any of its clients held shares in 1997 or participated in the 1997 vote that is supposedly the basis of Plaintiff's purported contract claim. The shareholders who *did* hold shares in 1997, however, voted to approve the proposed restructuring. (ER 145). The complaint contains no allegation of any misrepresentation, breach of contract, breach of fiduciary duty, or any other wrongdoing occurring in connection with the 1997 Proxy Vote.

Plaintiff also does not allege that the Fund engaged in any wrongdoing or harmed shareholders in any way after the 1997 Proxy Vote, prior to August 2007. During that ten-year period, the Fund, like all open-ended mutual funds, continuously offered its shares to the public pursuant to annual Prospectuses, which repeatedly affirmed to both potential and current shareholders that Defendants were following their fundamental investment objectives. (ER 163). Plaintiff's claims are based on the "subsequent" Prospectuses and Statements of Additional Information

-7-

("SAIs"),[5] specifically those issued *after* August 2007, which continued to make this same representation even though the Fund allegedly did not follow the fundamental investment objectives from August 2007 through February 2009. (ER 124, 163). All of Plaintiff's alleged damages arise from this purported 19-month Breach Period when the Fund allegedly misrepresented its investment objective and adherence to the industry concentration limit. (ER 147).

### B. Procedural History

Plaintiff first filed suit in 2008. Plaintiff's original complaint alleged that *every* prospectus "including the Prospectuses dated June 13, 2008"—in the middle of the Breach Period—stated that the Fund was "designed to offer high current income by tracking the performance of the [Index]." (ER 543). The original complaint further pleaded that "all" of the Fund's SAIs "reaffirmed that the Fund would continue to track the Index." (ER 544). Plaintiff initially asserted claims under Section 13(a) of the Investment Company Act ("ICA"), as well as state-law theories, based on allegations that Defendants stopped attempting to track the Index in August 2007. (ER 547). Plaintiff also accused Defendants of misrepresenting

---

[5] A mutual fund's SAI is part of its registration statement filed with the U.S. Securities and Exchange Commission. *See* https://www.sec.gov/answers/mfinfo.htm

their reasons for determining that CMOs would not count as a single "industry" for concentration purposes. (ER 546).

Plaintiff filed its First Amended Complaint (1AC) on March 2, 2009. In addition to restating each of the allegations listed above, the 1AC further clarified Plaintiff's position that Defendants had misled investors. Specifically, Plaintiff pleaded that the Prospectuses and SAIs issued *after* August 31, 2007, were materially misleading because they continued to represent that the Fund was seeking to track the Index, but omitted information that would have allowed investors to learn that this purported tracking was not occurring. (ER 495-96). The 1AC alleged that even when Defendants "first reported" the deviation in 2008, "[i]nvestors . . . could not anticipate from this Report that the Fund would continue to deviate." *Id.* Plaintiff further alleged that Defendants had withheld critical information from shareholders that would have allowed them to make informed decisions about their investments: "[I]t was not apparent to investors at the time, who thought they were holding a conservative index fund, that the Trust and Investment Advisor had engaged in a risky strategy . . . that deviated materially" from the Fund's stated investment objectives and "Investors were not informed that [the Fund's manager] had engaged in an investment strategy that was inconsistent with the Fund's stated investment objectives and policies." (ER 496-97).

After this Court affirmed that Plaintiff had no private cause of action under Section 13(a) of the ICA (ER 466-67), Plaintiff voluntarily withdrew the 1AC, in favor of a third attempt to state its claims. In its Second Amended Complaint ("2AC"), filed September 28, 2010, Plaintiff continued to assert the same basis for its claims. Plaintiff alleged that Defendants had "assured" investors that it would scrutinize every security and "represented" to shareholders that it would "seek a 90% correlation" between the Fund and the Index. (ER 424-25). Plaintiff further alleged that Defendants had "marketed" the Fund as an index fund to the investing public and "reiterated the conservative nature" of the Fund to shareholders. (ER 430-31). According to the 2AC, these representations became false during the Breach Period, misleading investors into purchasing and holding their shares throughout that time. (ER 433-34). As with the 1AC, the 2AC alleged that Defendants omitted material information from their disclosures because, even after the deviation had begun, shareholders "could not anticipate . . . that the Fund would continue to deviate" from the Index. (ER 433). Plaintiff again accused Defendants of misrepresenting the reason for the deviation. (ER 434).

In granting Defendants' motion to dismiss the 2AC, the District Court correctly concluded that "the central theme of the [2AC] and all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on these

-10-

misrepresentations, and that Plaintiffs were injured when these statements turned out to be false." (ER 333-34). The District Court also rejected the argument that each of the representations identified in the 2AC were not misrepresentations because they were "true when made," holding that:

> Even if Plaintiffs now allege the statements were true at some point, the class definition starts the clock for the class claims at the moment Plaintiffs allege the statements became untrue – "from August 31, 2007 through February 27, 2009." At the hearing on this Motion, Plaintiffs stated that the complained-of deviation from the Index began at the start of the class period, and Plaintiffs' complaint makes clear that at this point, Plaintiffs contend that the defendants' previous representations and assurances about the Fund became untrue.

(ER 335). Accordingly, the District Court dismissed *all* of Plaintiff's claims under SLUSA. However, the District Court granted Plaintiff yet another opportunity to amend its claims for the sole purpose of determining whether Plaintiff could invoke the statutory exception to SLUSA preclusion, known as the Delaware Carve-Out. (ER 338-339). The District Court further dismissed Plaintiff's breach of contract and breach of covenant claims with prejudice, ruling that Plaintiff had not pleaded the existence of any enforceable contract. (ER 343).

Plaintiff then filed its Third Amended Complaint (3AC) on March 28, 2011. Although Plaintiff was now on its *fourth* attempt to articulate a claim, the District Court recognized that the 3AC did not change the gravamen of Plaintiff's claim. (ER 252) ("Although Northstar has amended its Complaint three times, *its core allegations remain the same*.") (emphasis added). Although the gravamen did not

-11-

change, Plaintiff did make a tactical effort to avoid SLUSA by separating Plaintiff's proposed class into two sub-classes: (1) a "Breach" class consisting of shareholders who *purchased* Fund shares after August 31, 2007, pursuant to Prospectuses issued throughout the Breach Period that were allegedly false and (2) a "Pre-Breach" class consisting of shareholders who purchased prior to August 31, 2007, but were purportedly harmed by their decisions to *hold* their shares during the Breach Period based on the same allegedly false Prospectuses issued in that time period. (ER 286); Op. Br. at 14 (conceding split of class done to "protect the claims of members of the Pre-Breach Class in the event that the District Court held that SLUSA was implicated during the Breach Period").[6] On August 8, 2011, the 3AC was dismissed with prejudice for failure to state a claim and the District Court did not reach the applicability of SLUSA.

On April 28, 2015, this Court reversed the District Court's rulings that the 2AC and 3AC failed to state a claim. This Court declined to reach the question of whether Plaintiff's claims were precluded by SLUSA, instead directing the District Court to determine whether "any" of Plaintiff's claims were precluded by SLUSA "in the first instance." (ER 209). Although this Court did not suggest any need, or

---

[6] The fact that the "Breach" and "Pre-Breach" classes each assert claims based on the same alleged misrepresentations is further demonstrated by the fact that Plaintiff did not suggest any distinction between the two subclasses in its first three attempts to draft a complaint.

basis, for further amendments, on June 25, 2015, Plaintiff successfully obtained leave, over Defendants' objection, to file its *fifth* complaint in this case. Plaintiff was thus well aware that, after seven years of litigation, this fifth iteration of its case would be subjected to heavy scrutiny under SLUSA.

Nevertheless, the 4AC did nothing to alter the basic premise of Plaintiff's claims, *i.e.*, that from 2007 to 2009 the Fund purportedly did not manage the Fund in accordance with its disclosed representation to shareholders, which induced shareholders to hold or purchase shares to their detriment. The 4AC expressly pleads that Defendants' representations that the Fund sought to track the Index and avoid over-concentration in any one industry were first stated in 1997 and then "reiterated" in every "subsequent" Prospectus, including throughout the Breach Period. (ER 163). As a result, the District Court correctly held that such claims were class-action securities fraud claims in disguise and were precluded by SLUSA. In orders issued on October 5, 2015, and February 23, 2016,[7] the District Court confirmed that Plaintiff had not altered the gravamen of its claims, which "arise out of the fact (1) that Defendants represented that the Fund's assets would be invested according

---

[7]  In its October 5, 2015, Order, the District Court determined that Defendants' argument that SLUSA precluded the breach of fiduciary duty claims could only be brought in a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Defendants filed that motion on November 4, 2015, and on February 23, 2016, the District Court granted the motion under the same reasoning stated in its October 5, 2015, Order.

to certain fundamental investment objectives, (2) that shareholders relied upon these representations, and (3) that Defendants did not invest in accordance with these representations." (ER 22-23). As the District Court observed, this case presents a "misrepresentation [claim] in the most classic sense" because Plaintiff has alleged that "[e]ither the [Defendants] misrepresented what was going on . . . or the [Defendants] declined to inform shareholders of the . . . decision to abandon the Fund's core investment objectives." (ER 60-61).

## SUMMARY OF ARGUMENT

Plaintiff asserts a quintessential securities fraud claim, alleging that Defendants repeatedly assured investors from August 2007 through February 2009 that the Fund would track the performance of the Index and avoid over-concentration by limiting investment in any particular industry to 25% of its assets, even though such statements were false throughout this time period. In an effort to evade the PSLRA's pleading requirements and limitations, Plaintiff has styled its claims as state-law causes of action. But SLUSA represents a congressional effort to prevent such gamesmanship and the District Court properly dismissed Plaintiff's claims under SLUSA. Plaintiff cites no authority, and Defendants know of none, that has ever allowed a plaintiff to escape SLUSA preclusion when asserting class claims brought under state law alleging that statements contained in a security's offering documents were untrue or later became untrue without timely correction.

-14-

Accordingly, the District Court's dismissal of Plaintiff's complaint should be affirmed.

Plaintiff takes the position that its claims are immune from SLUSA preclusion because the alleged misrepresentations appeared in public filings that Plaintiff has described as a contract. However, this Court and every other court to consider the issue has flatly rejected Plaintiff's suggestion that breach of contract claims are per se exempt from SLUSA preclusion. SLUSA applies whenever a class action is based on fraudulent statements or omissions made in connection with the purchase or sale of covered securities and it makes no difference if those statements take the form of contractual "promises" or "representations."

Plaintiff also seeks refuge in an exception to SLUSA known as the Delaware Carve-Out, but that exception could only apply here if the misrepresentations at issue influenced shareholders' decisions regarding how to vote their shares. Here, neither the Plaintiff nor its assignor had anything to do with the Fund until years after the only shareholder vote occurred in 1997 and the alleged misrepresentations, ten years later, obviously had nothing to do with that vote. As recognized by the District Court, this exception is thus inapplicable because no vote occurred during the Breach Period and none of the alleged misrepresentations were designed to influence any shareholder vote.

Lastly, Plaintiff provides no basis to conclude that the District Court abused its discretion in rejecting Plaintiff's judicial estoppel and waiver arguments. To the contrary, the District Court properly considered and applied SLUSA exactly as directed by this Court, which, despite knowledge of the facts that purportedly caused a waiver, expressly required the District Court to determine whether SLUSA precludes all of Plaintiff's claims "in the first instance." (ER 209).

## STANDARD OF REVIEW

Defendants agree that the general standard of review for the dismissal of Plaintiff's claims is *de novo*. The standard of review for the District Court's *discretionary* rulings regarding estoppel and waiver, however, are subject to an abuse of discretion standard. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("We review the district court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion"); *Novato Fire Prot. Dist. v. U.S.*, 181 F.3d 1135, 1141 (9th Cir. 1999) (on appeal, court considers whether "district court . . . abuse[d] its discretion in refusing to apply the doctrine of waiver").

## ARGUMENT

**I.    SLUSA Bars State-Law Claims, Like Those Here, Based On Alleged Misrepresentations In Connection With The Purchase Or Sale Of A Covered Security.**

**A.    The Purpose Of SLUSA Is To Preclude Even Well-Pleaded State-Law Causes Of Action For Conduct Covered By The Anti-Falsity Provisions Of The Federal Securities Laws.**

Congress enacted the PSLRA because "the class-action device was being used to injure the entire U.S. economy." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (internal quotation marks omitted). "[N]uisance filings, . . . vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent" had, among other abuses, "resulted in extortionate settlements." *Id* (internal quotation marks omitted). Accordingly, the PSLRA "represent[ed] Congress' effort to curb these perceived abuses" by "limit[ing] recoverable damages and attorney's fees, provid[ing] a 'safe harbor' for forward-looking statements, impos[ing] new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandat[ing] imposition of sanctions for frivolous litigation, and authoriz[ing] a stay of discovery pending . . . any motion to dismiss." *Id.* (citing 15 U.S.C. § 78u-4).

One of the "unintended consequence[s]" of the PSLRA was that "some members of the plaintiffs' bar [decided] to avoid the federal forum altogether" and file claims under state-law theories. *Id.* at 82. Although "state-court litigation of

class actions involving nationally traded securities had previously been rare[,]" there was a clear "shift from Federal to State courts" after the PSLRA was passed as a result of plaintiffs' efforts to "frustrate the objectives of the [PSLRA]." *Id.* (internal quotation marks omitted). SLUSA was enacted shortly after the PSLRA in order to counteract this shift and ensure that plaintiffs asserting claims that normally would have been asserted under the federal securities laws did not circumvent the procedural safeguards contained in the PSLRA. *Id.*; *see also Falkowski v. Imation Corp.*, 309 F.3d 1123, 1127 (9th Cir. 2002).

Relevant here, SLUSA mandates that "no covered class action," meaning a lawsuit brought on behalf of more than 50 people (15 U.S.C. § 78bb(f)(5)(b)), "based upon the statutory or common law of any State . . . may be maintained in any State or Federal court by any private party alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" (15 U.S.C. § 78bb(f)(1)-(1)(A)).[8] The Supreme Court has recognized "that Congress envisioned a broad construction" of SLUSA because "[a] narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose." *Dabit*, 547 U.S. at 86; *see also Rowinski v. Salomon*

---

[8] A "covered security" for purposes of SLUSA means certain nationally traded securities set forth in 15 U.S.C. § 77r(b). There is no dispute that Fund shares are a "covered security."

-18-

*Smith Barney Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) ("Congress envisioned a broad interpretation of SLUSA").[9]

## B. SLUSA Preclusion Cannot Be Averted Through "Artful Pleading."

Although Plaintiff puts great emphasis on the fact that this Court previously found its state-law claims had been adequately pleaded under state law (Op. Br. at 25-26), that fact is *irrelevant* under SLUSA because the entire purpose of SLUSA is to make certain state-law claims "nonactionable through the class action device in federal as well as state court," even if well-pleaded. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009). Plaintiff essentially seeks protection under the "well-pleaded complaint rule,"[10] which normally affirms that "the plaintiff is the master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S.

---

[9] Relying on *Chadbourne & Parke LLP v. Troice*, Plaintiff incorrectly asserts that SLUSA should be read narrowly. Op. Br. at 32 (citing 134 S. Ct. 1058, 1068-69 (2014)). *Troice* does nothing more than set the outer limit on the *broad* construction of SLUSA that was recognized by the Supreme Court in *Dabit*. 134 S. Ct. at 1068. In *Troice*, there was no actual sale of any "covered security" and the Supreme Court ruled that SLUSA was not broad enough to apply in such circumstances. *Id.* at 1066. Contrary to Plaintiff's assertion, *Troice* explicitly states "[w]e do not here modify *Dabit*." *Id.* In any event, because there is no dispute in this case that the securities at issue are "covered securities," the limitation recognized in *Troice* has no relevance here.

[10] The "well-pleaded complaint" rule holds that federal question jurisdiction cannot be acquired over a case unless an issue of federal law appears on the face of a properly pleaded complaint. *See, e.g.*, *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9-10 (1983).

386, 398-99 (1987). But SLUSA is "'an express exception to the well-pleaded complaint rule'" because it requires the Court to look beyond the manner in which a plaintiff chooses to style its allegations and determine whether the gravamen of the claim is based on misrepresentations, regardless of whether a different legal theory can be adequately stated under the same factual allegations. *Proctor*, 584 F.3d at 1220 n.8 (quoting *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007)); *see also Rowinski*, 398 F.3d at 304 ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting.").

Indeed, Plaintiff's reliance on this Court's prior ruling to somehow preclude an analysis under SLUSA is misplaced because, in that very ruling, the Court expressly directed the District Court to consider whether SLUSA precluded the same claims that it had just sustained under state law. (ER 209). In doing so, this Court properly recognized that even an adequately pleaded claim may be precluded by SLUSA. Simply put, even if Plaintiff has adequately pleaded its breach of fiduciary duty or breach of contract claims, those claims remain subject to SLUSA preclusion because SLUSA applies "wherever deceptive statements or conduct form the gravamen or essence of the claim." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, ("*Freeman*") 704 F.3d 1110, 1115 (9th Cir. 2013).

These basic principles also doom Plaintiff's argument that SLUSA will only bar claims that include misrepresentation as an "essential element." Op. Br. at 24. Indeed, this Court and other courts across the country have consistently rejected this argument: "When the success of a class action . . . depends on a showing that the defendant committed false conduct conforming to SLUSA's specifications, the claim[s] will be subject to SLUSA notwithstanding that the claim asserts liability on the part of the defendant under a state law theory that does not include false conduct *as an essential element*—such as breach of a contractual right to fair dealing." *In re Kingate Mgmt. Ltd. Litig.* ("*Kingate*"), 784 F.3d 128, 149 (2d Cir. 2015) (emphasis in original); *see also Proctor*, 584 F.3d at 1222 n.13 ("Misrepresentation need not be a specific element of the claim to fall within [SLUSA's] preclusion"); *Stoody-Broser v. Bank of Am.*, 442 F. App'x 247, 248 (9th Cir. 2011) (same); *Rowinski*, 398 F.3d at 300 ("preemption [under SLUSA] does not turn on whether allegations [of misrepresentation or omission] are characterized as facts or essential legal elements of a claim"); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009) ("[SLUSA] does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple").

Courts have protected these principles by consistently rejecting efforts by plaintiffs to avoid SLUSA preclusion by avoiding pleading references to

misrepresentations or omissions or by using different vocabulary such as, in this case, "promises." *Freeman*, 704 F.3d at 1115 (holding that "plaintiffs cannot avoid preclusion through artful pleading that removes the covered words . . . but leaves in the covered concepts") (internal quotation marks omitted); *Kingate*, 784 F.3d at 140 (holding that "plaintiffs should not be permitted to escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim, such as by characterizing a claim of falsity as a breach of a contractual duty"); *Rowinski*, 398 F.3d at 304 (SLUSA's "preemptive force cannot be circumvented by artful drafting."). Put more succinctly, if the alleged conduct would violate the anti-falsity provisions of the federal securities laws, then no amount of artful pleading to "camouflag[e]" such allegations will save state-law claims of breach of contract and breach of fiduciary duty under SLUSA. *Kingate*, 784 F.3d at 147, 149-51.[11]

Plaintiff asks this Court to disregard this entire body of case law regarding SLUSA's preclusive reach, pointing to the Supreme Court's ruling in *Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Manning*, 136 S. Ct. 1562 (2016). But *Manning*

---

[11] Indeed, such a claim would be precluded even if the federal securities laws did not provide for a private cause of action to enforce the violation. *Kingate*, 784 F.3d at 140 (SLUSA would bar "class actions of persons induced by the defendant's falsities to *hold* securities" even though such persons would not have a private cause of action under the federal securities laws) (emphasis in original) (citing *Dabit*).

provides no escape hatch here. In fact, *Manning* did not address SLUSA at all, nor did it have any reason to consider the universally recognized body of authority, cited above, observing that SLUSA is an *exception* to the well-pleaded complaint rule for federal question jurisdiction and *requires* a Court to determine if a complaint is the product of "artful pleading."[12] *Manning* merely held that an irrelevant federal jurisdictional statute did not permit the District Court to "go behind the face of a complaint to determine whether it is the product of 'artful pleading.'" *Id.* at 1575. But even if *Manning*'s analysis of a completely unrelated statute were somehow relevant here, *Manning* held only that federal jurisdictional statutes—which are not even implicated here—should not be interpreted "more expansively than their language, most fairly read, requires." *Manning*, 136 S. Ct. at 1573. Such a concern is not relevant here, where Plaintiff's claims fall squarely within SLUSA's language.

Adopting Plaintiff's strained reading of *Manning* thus would contradict controlling authority from the Supreme Court, this Circuit, and every sister circuit to consider the issue, thereby effectively neutering both SLUSA and the PSLRA.

## II. The District Court Correctly Determined That All Of Plaintiff's Claims Are Precluded Under SLUSA.

---

[12] The central holding of *Manning* is that a statute's grant of exclusive federal jurisdiction is determined under the "arising under" test of the federal question statute, 28 U.S.C. § 1331, of which the "well-pleaded complaint" rule is an integral part. *See, e.g.*, *Franchise Tax Bd.*, 463 U.S. at 9-10; *Merrill Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807-09 (1986). Because SLUSA is exempt from the "arising under" federal question test, *Manning* is irrelevant.

**A.     The Gravamen Of Plaintiff's Claims Has Always Rested Upon Alleged Misrepresentations From 2007 Through 2009.**

When evaluating amended claims under SLUSA, the substance of Plaintiff's prior pleadings necessarily informs the true nature of subsequent allegations involving the same conduct. *See Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002) (SLUSA precludes claims where Plaintiff originally asserts fraud and then files an amended complaint which "deleted the allegations of fraud, misrepresentation, and non-disclosure" but "the fact allegations in the two complaints are otherwise essentially the same"). The record before this Court presents no less than *five* complaints reflecting eight years of refinements offered by the Plaintiff. But despite this herculean effort, much of it specifically directed toward avoiding SLUSA, nothing of substance has changed, as Plaintiff has chosen merely to "remove[ ] the covered words," but retain "covered concepts." *Freeman*, 704 F.3d at 1115.

Plaintiff's first complaint alleged that every Fund Prospectus, including those issued during the "Breach Period," represented that the Fund was "designed to offer high current income by tracking the performance of the [Index]" and further alleged that "all" of the Fund's SAIs "reaffirmed that the Fund would continue to track the Index." (ER 543-44). That complaint alleged that investors were damaged after such affirmations became untrue after August 2007. (ER 531). In its subsequently

-24-

amended complaint, Plaintiff emphasized its assertion that Defendants misled shareholders, adding allegations that the Fund's public disclosures issued *after* the deviation were materially deficient because they omitted information necessary for shareholders to appreciate the magnitude of the deviation. *See* (ER 495-96) ("Investors . . . could not anticipate from this Report [issued in 2008] that the Fund would continue to deviate. . . . [I]t was not apparent to investors at the time, who thought they were holding a conservative index fund, that the Trust and Investment Advisor had engaged in a risky strategy . . . that deviated materially"); (ER 497) ("Investors were not informed that [the Fund's manager] had engaged in an investment strategy that was inconsistent with the Fund's stated investment objectives and policies."). The deviation from the stated investment policies and the failure to disclose information about the deviation purportedly caused the shareholders "to suffer a negative . . . differential in total return for the Fund compared to the Index for the [Breach Period]." (ER 482).

Now on its *fifth* complaint, Plaintiff continues to assert the exact same claim. Plaintiff asserts that the Defendants first represented in 1997 that the Fund would be managed subject to specific investment restrictions and again emphasizes that Defendants continued to "reiterate" these same representations in "each subsequent Prospectus and [SAI]." (ER 163). The current complaint also continues to allege that these representations became false during the Breach Period, causing damage to

-25-

shareholders. *Id*. Accordingly, Plaintiff's claims—whether framed as breach of contract, breach of fiduciary duty, or otherwise—continue to be based on the same alleged misrepresentations that have served as the gravamen of this case since its inception.

Courts that have addressed directly analogous claims have all found them to be precluded under SLUSA. In *Hampton v. Pacific Investment Management Company, LLC* ("*Hampton*"), 146 F. Supp. 3d 1207 (C.D. Cal. 2015), a mutual fund shareholder filed substantively identical claims to those asserted here, alleging that a mutual fund had "exceeded" an investment restriction stated in its prospectus. *Id*. at 1213-14. Like Plaintiff here, the plaintiff in *Hampton* sought to evade SLUSA by alleging that the investment restriction in the fund's prospectus was a "contract," the breach of which did not require a misrepresentation. *Id*. But also like the claims asserted here, the court found those in *Hampton* "turn[ed] on whether or not representations made by Defendants—namely, that they would not exceed the [investment restriction]—were true or not." *Id*. The Court ruled that such claims "rise and fall with [the] allegation that Defendants made an important misrepresentation about how the Fund would invest their money. That is precisely

-26-

the sort of claim SLUSA was intended to preclude in order to give the PSLRA procedural requirements teeth." *Id.* at 1215.[13]

Similarly, in *Holtz v. J.P. Morgan Securities LLC*, 2013 WL 3240181 (N.D. Ill. June 26, 2013), the Northern District of Illinois held that SLUSA precludes breach of contract and fiduciary duty claims where a mutual fund told shareholders in various SEC filings that the fund would "act[] in their client's best interests," but, instead, allegedly engaged in transactions that would maximize fees to the defendant. The court determined that "the substance of the Plaintiffs' allegations, when considered in their entirety, amounts to a claim of a fraudulent scheme" and "[c]onsequently, despite Plaintiffs' artful pleading, the Amended Complaint presents a claim for fraud." *Id.* at *4.[14]

---

[13] Plaintiff seeks to distinguish *Hampton* from the present case on the basis that the misrepresentations here appear in a purported contract, but the misrepresentations in *Hampton* did not. Op. Br. at 42-43. But, as is discussed more fully in Part III.A below, this is an irrelevant distinction because the existence of a contract makes no difference for the purposes of SLUSA. The misrepresentations here and in *Hampton* both appeared in mutual fund prospectuses designed to induce shareholders to buy or hold their shares and any claimed harm from such misrepresentations must be remedied under the federal securities laws, subject to the limitations of the PSLRA. In any case, the *Hampton* plaintiff *did* allege that the representations at issue appeared in a contract and the court necessarily accepted that allegation as true, but still correctly found the claims precluded under SLUSA. *Hampton*, 146 F. Supp. 3d at 1213-14.

[14] The Northern District of California also recently dismissed two similar "best execution" cases under SLUSA in a consolidated order. *See Lim v. Charles Schwab & Co., Inc.*, 2015 WL 7996475 (N.D. Cal. 2015). As summarized by the

In contrast, Plaintiff does not cite a single instance in which any court determined that SLUSA does not apply to state-law shareholder class-action claims arising out of statements made in a security's offering documents that allegedly were, or became, untrue. To Defendants' knowledge, no such case exists. Allegations arising out of claimed misrepresentations in a Fund's offering materials are quintessential securities fraud claims and should be asserted under the federal securities laws, subject to the PSLRA, or not at all.

**B.    Plaintiff's Claims Are Not And Cannot Be Based Exclusively On The 1997 Proxy**

Plaintiff's appeal seeks to avoid the case law discussed above by offering the Court a classic red herring, arguing that its claims cannot involve securities fraud allegations because the original source of the relevant representations is the Fund's 1997 Proxy, which was true when issued ten years before any alleged wrongdoing. This non-sequitur suffers from many flaws.

First, Plaintiff's claims are *not* based on events occurring in 1997 because each and every one of its complaints plainly alleges that Plaintiff's claims are based

---

Court, because the plaintiffs alleged that the defendant "continued to portray that it was affording clients 'best execution,'" even though it was purportedly not doing so, the plaintiffs were necessarily accusing the defendant of "misrepresent[ing] that best execution would be achieved for its customers, or fail[ing] to disclose that best execution was no longer possible." *Id.* at *6. "In either case, plaintiffs are accusing [defendant] of engaging in deceptive conduct" and SLUSA applies. *Id.* This analysis is also directly applicable here.

-28-

on the Fund's purported decision to stop following its investment objectives *from August 2007 through February 2009*. (ER 126-27). Plaintiff bases its case on the *repetition* of those statements throughout the Breach Period during times when they allegedly were no longer true. (ER 163). It is well established that the repetition of a once-truthful statement at a time when it is no longer accurate gives rise to a claim for securities fraud. *See Reese v. BP Expl. (Alaska) Inc.,* 643 F.3d 681, 692 (9th Cir. 2011) ("a promise that is forward looking at the time it is made could conceivably become an inaccurate assertion . . . if its repeated filing creates an impression of a state of affairs that differs in a material way from the one that actually exists") (citing *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (quotations omitted)); *see also United States v. Dillard*, 101 F.2d 829, 834 (2d Cir. 1938) (allegations that a "company . . . continued to repeat what [was] once true, had become false and was then known to be false" is sufficient to establish a "scheme to defraud"); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 759 (S.D. Tex. 2012) ("A repeated utterance, even on a promise of progress, can become misleading where repetition becomes a statement of current and ongoing compliance"). That is precisely the claim that Plaintiff has articulated here.[15]

---

[15] To be clear, Defendants deny that Plaintiff's claims have any merit under the securities laws, but no analysis of the merits (or lack thereof) is necessary for the purposes of this appeal because it is sufficient to conclude that the claims, as they have been pleaded, are precluded by SLUSA.

-29-

If Plaintiff's argument to this Court were taken to its logical conclusion, shareholders who bought shares in a mutual fund pursuant to a false prospectus would have no claim under the securities laws if the prospectus was true on the day it was first filed, perhaps years earlier. That is plainly not the law and Plaintiff cites no authority to support this radical position. In fact, mutual funds are required to regularly amend their prospectuses for accuracy since mutual funds are continuously reoffered to the market on a daily basis. *See In re TCW/DW N. Am. Gov't Income Tr. Sec. Litig.*, 941 F. Supp. 326, 329 (S.D.N.Y. 1996) ("An open-end mutual fund . . . conducts a continuous offering of shares, made pursuant to registration statements and prospectuses which are amended periodically"). If a statement in an offering document becomes false at any point it is effective (whether initially false or not) and is not corrected in a timely fashion, the issuer is liable under the federal securities laws. *See, e.g.*, 15 U.S.C. § 77k (providing for strict liability for false statements in registration statements); 15 U.S.C. § 77l (providing for strict liability for false statements in prospectuses); *Fried v. Stiefel Labs., Inc.*, 814 F.3d 1288, 1294 (11th Cir. 2016) ("An individual has a duty to update prior statements if the statements were true when made, but misleading or deceptive if left unrevised and a failure to update is an "omission" under [Rule 10b-5]") (internal quotation marks omitted); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1096 (2d Cir. 1972) (holding the anti-fraud provisions of the securities laws "require the prospectus to

-30-

reflect any post-effective changes necessary to keep the prospectus from being misleading in any material respect").

Second, Plaintiff's assertion that its claims are based exclusively on the true statements in the 1997 Proxy fails for another independent reason: no named plaintiff (or assignor) held shares in 1997, received the Proxy Statement in 1997, or participated in the proxy vote. (ER 131). Northstar is acting as the sole plaintiff in this case based on an assignment from its client, Henry Holz, who first became a shareholder in February 2007. *Id.* Plaintiff provides no basis for asserting any claim based on a Proxy Statement issued nearly a decade before Holz invested, which Holz never received, and which involved a vote in which he never participated. When Holz decided to purchase and hold his shares during the Breach Period, he necessarily did so pursuant to the Fund's disclosures in effect *at that time*. By claiming that Defendants did not manage the Fund in the manner in which the most-recent prospectuses disclosed, Plaintiff necessarily pleads a securities fraud claim.[16]

---

[16] Of course, if Plaintiff continues to take the contrary position—that the Fund did not conceal information and Holz invested and held shares with full knowledge of the deviation—then Holz would have no valid claim under any theory. *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (no breach of contract where "the seller has disclosed at the outset the facts that would constitute a breach . . . and the buyer closes with full knowledge and acceptance of those [facts]"); *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1509 (9th Cir. 1987) ("a warranty clause in a policy of insurance will not be held breached for a cause known to the agent before the application was signed") (internal quotation marks omitted).

Moreover, by separating the "Breach" and "Pre-Breach" classes, Plaintiff implicitly concedes the applicability of SLUSA to all of its claims. The *only* stated reason for Plaintiff's separation of these classes was an attempt to "protect the claims of the members of the Pre-Breach Class in the event that the District Court held that SLUSA was implicated during the Breach Period." Op. Br. at 14. Plaintiff's anticipation that SLUSA preclusion may apply to the "Breach" class makes perfect sense: members of that class purchased shares *while* the Fund was allegedly deviating from its stated investment restrictions. These purported class members were not parties to any "contract" with, or owed any duties by, Defendants until they purchased Fund shares pursuant to the allegedly false Fund Prospectus. The claims of these class members are thus unambiguously for securities fraud.

However, Plaintiff's anticipation that "SLUSA was implicated during the Breach Period" does nothing to save the claims of the Pre-Breach class because ***all*** class members' claims are premised on the same purported misrepresentations made during the Breach Period and are similarly precluded. Under Plaintiff's articulation, the only difference between the sub-classes is that the "Breach" class *bought* shares pursuant to false statements and the "Pre-Breach" class *held* those shares in reliance on the repetition of those same statements at a time when they were no longer true. Under SLUSA, there is no legal basis for treating "holder" claims (the Pre-Breach class) any differently from "buyer" claims (the Breach class). *Dabit*, 547 U.S. at

86-87 (SLUSA precludes "holder" claims under the federal securities laws); *Kingate*, 785 F.3d at 140 (same).

## III.  Plaintiff's Alternative Arguments Are Also Legally Baseless.

### A.  There Is No "Breach Of Contract" Exception To SLUSA.

Plaintiff's primary legal defense to SLUSA preclusion is the supposedly "established principle that SLUSA does not reach breach of contract claims."  Op. Br. at 4.[17]  No such principle exists.  To the contrary, this Court has explicitly recognized that SLUSA "bars class actions brought under state law, whether styled in tort, *contract* or breach of fiduciary duty, that in essence claim misrepresentation or omission in connection with certain securities transactions."  *Freeman,* 704 F.3d at 1114 (emphasis added).  This Court's sister circuits are in full agreement that SLUSA is capable of barring even well-pleaded breach of contract claims.  *See, e.g.*, *Rowinski*, 398 F.3d at 300 (SLUSA bars breach of contract claim even though "misrepresentation is not an essential legal element"); *Daniels v. Morgan Asset Mgmt., Inc.*, 497 F. App'x 548, 554 (6th Cir. 2012) (SLUSA precludes breach of contract claim where Plaintiff alleged that defendant "omitted a material fact during the contractual period").  As the Fifth Circuit has explained, recognition of a breach

---

[17]  Obviously, this defense has no bearing on Plaintiff's breach of fiduciary duty or third-party beneficiary claims.

of contract exception to SLUSA would eviscerate Congress' intended purpose in enacting SLUSA:

> [Plaintiff], however, contends that [SLUSA] does not mandate dismissal of his state law claim because, regardless of the specific allegations it contains, he has styled it [as] a claim for "breach of contract." We do not agree. The interpretation of SLUSA that [plaintiff] proposes would circumvent both the plain meaning of the statutory text and Congress' clearly expressed purpose in enacting it. . . . The issue of preemption . . . hinges on the content of the allegations—not on the label affixed to the cause of action.

*Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004). It is simply beyond dispute that contract claims fall within SLUSA's preclusive scope when they arise out of misrepresentations in connection with covered securities.[18]

## B. Plaintiff's Distinction Between "Promises" And "Representations" Is Illusory And Unworkable.

Related to its fallacy that all contract claims are immune from SLUSA preclusion, Plaintiff invents a specious distinction between "promises" and "representations." Specifically, Plaintiff complains that the District Court's "core"

---

[18] Plaintiff again cites *Troice*, which itself cites *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.* 532 U.S. 588, 596 (2001), as support for the supposedly "established principle" exempting breach of contract claims from SLUSA. Op. Br. at 4. But the language in *Wharf* cited in *Troice* recognizes only the uncontroversial and irrelevant principle that "*ordinary* state breach-of-contract claims"—meaning those *not* based on misrepresentations or omissions—are "actions that lie outside [SLUSA's] basic objectives." *Wharf (Holdings) Ltd.*, 532 U.S. at 596 (emphasis added). Neither *Troice* nor *Wharf* remotely supports Plaintiff's conclusion that *all* contract claims will avoid SLUSA preclusion.

error was that it "treated 'representations' as synonymous with 'promises'" when "unlike a representation, a promise can form a contract and is not subject to SLUSA preclusion." Op. Br. at 30-31, 37. This purported distinction, however, is illusory and meaningless as a matter of fact and law.

As an initial matter, this purported distinction is contrary to plain English because a promise is a representation. Black's Law Dictionary provides substantively identical definitions for the two terms; a "representation" is defined as "the manifestation to another that a fact, including a state of mind, exists," while a "promise" is "[t]he manifestation of an intention to act or refrain from acting in a specified manner." Black's Law Dictionary (19th ed. 2014). Indeed, Plaintiff's suggestion that only "promises" form contracts, and "representations" do not, cannot be reconciled with this Court's own ruling in this case that "the annual *representations* by the Fund that it would follow [the fundamental investment policies] are sufficient to form a contract." (ER 219) (emphasis added). The two words are substantively interchangeable.[19]

---

[19] If the purported difference between a "promise" and "representation" is between a forward-looking statement and a statement of current status, then that would have no bearing here either because, as alleged, the Fund necessarily reiterated that the Fund was operating in a certain manner when it was not. A forward-looking statement becomes a false statement actionable under the securities laws if its repetition "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Reese*, 643 F.3d at 692 (quoting *Brody*, 280 F.3d at 1006).

Moreover, there is no support for the proposition that "representations" are covered by SLUSA and "promises" are not. The only case Plaintiff cites for this purported proposition—*Freeman*—holds no such thing. *Freeman* held that SLUSA applies "wherever deceptive statements or conduct form the gravamen or essence of the claim" (704 F.3d at 1115) and made no distinction between "representations" or "promises." *Freeman* dealt with a dispute regarding the meaning of the phrase "cost of insurance" in an insurance policy. The plaintiff in *Freeman* complained that the phrase was a "term of art" that required the insurer to calculate the cost of insurance in a particular way. Although the insurer calculated it differently, there was no allegation that the insurer had *misrepresented* the meaning of this term or its conduct. Instead, the record indicated that the term "cost of insurance" was subject to multiple interpretations, that each party honestly held differing understandings of the term, and that the plaintiff only had to "persuade the court that theirs is the better reading of the contract term." *Freeman*, 704 F.3d at 1115. This claim was not found to be precluded by SLUSA.

Nothing in *Freeman* suggests that SLUSA's applicability turned on the characterization of the contractual term as a "promise" rather than a "representation." Instead, the distinction drawn in *Freeman* was whether the claim turned on the legal interpretation of a contractual term (as the Court noted, a classic "what is a chicken?" question) or deceptive conduct. *Id.* Unlike *Freeman*, this case

-36-

does not present a question of contract interpretation. The only dispute here is whether the shareholders were harmed throughout the Breach Period because the Fund stated in its Prospectuses that it was investing its assets in a certain way when, in fact, it was not.

Plaintiff cites no authority drawing its "representation/promise" distinction. To the contrary, courts treat the two terms interchangeably when applying SLUSA to breach of contract claims. For example, in *Zola v. TD Ameritrade*, the court held that SLUSA precluded what the plaintiffs asserted was an "ostensibly 'pure' breach of contract claim" based on a "failure to fulfill [a] promise." 2016 WL 1170979, at *10 (D. Neb. Mar. 23, 2016). In doing so, the court determined that "[m]aterial misrepresentations and omissions serve as the factual predicate for all of the plaintiffs' state law class action claims." *Id.* The Court treated the terms "representations" and "promise" interchangeably, finding the claims precluded regardless of how the statements where characterized: "plaintiff's state law claims are all based on [the company]'s *representations* that it would provide best execution and failure to fulfill the *promise* of 'best execution.'" *Id.* (emphasis added). The same analysis applies equally to Plaintiff's claims here.

### C. Affirming The District Court's Ruling Does Not Deprive Plaintiff Of Any Remedy To Which It Was Entitled.

Plaintiff complains that the District Court has "foreclose[d] *all* avenues of relief" (Op. Br. at 5), but this is simply not true. SLUSA does not extinguish claims,

but "merely denies plaintiffs the right to use the class-action devise to vindicate certain claims. Plaintiffs retain the right to bring such a claim as an individual state-law claim or federal securities fraud class action claim." *In re Lord Abbott Mut. Funds Fee Litig.*, 553 F.3d 248, 251 (3d Cir. 2009) (quoting *Dabit*, 547 U.S. at 87). Accordingly, Plaintiff had multiple remedies that it could have pursued without offending SLUSA. First, Plaintiff could have filed a class action under the federal securities laws. Second, Plaintiff could have asserted the same state-law causes of action it now asserts in an individual capacity, rather than on behalf of a class. Third, Plaintiff could have initiated arbitration proceedings against the broker-dealer through which shareholders purchased their shares, Charles Schwab & Co, Inc. SLUSA did not bar any of these avenues to relief, which Plaintiff *chose* to ignore. Instead, Plaintiff made a tactical choice to try for the maximum possible financial award by asserting class claims under state-law causes of action that would not be subject to the PSLRA's limits on damages and attorneys' fees. This strategy is precisely the type of behavior Congress intended to prevent in enacting SLUSA and, in dismissing Plaintiff's claims, the District Court properly held Plaintiff accountable for its own decision.

In a misguided effort to suggest that the federal securities laws would not have provided Plaintiff with an appropriate remedy, Plaintiff argues that the 4AC would not support a claim under the federal securities laws because the 4AC does not plead

misrepresentation or scienter. Op. Br. at 26-27. But this unpersuasive tautology is belied by the fact that Plaintiff has *always* pled misrepresentations and did, in fact, plead scienter in its prior pleadings, but removed those allegations as part of its efforts to evade SLUSA in its later complaints. (ER 496, 498). In any event, SLUSA has no scienter requirement because it applies to anti-falsity provisions of the securities laws, such as Section 11 of the Securities Act of 1933, which also do not require scienter. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1346 (11th Cir. 2002) (emphasis in original) ("we cannot accept [plaintiffs'] contention that scienter is the dispositive factor in determining whether a given lawsuit falls within the scope of SLUSA"); *Kingate*, 784 F.3d at 151 (SLUSA preclusion is not limited to "only the anti-fraud provisions of the 1934 Act" so there is "no reason why the absence of scienter should prevent SLUSA" preclusion).[20]

Affirming the District Court's ruling will have no bearing on ordinary breach of contract claims, like the claims at issue in *Freeman*, nor will it preclude future

---

[20] Continuing its strained effort to shift the focus of this case from the "Breach Period" alleged in its own complaints to 1997, Plaintiff also inexplicably claims that the limitations period for securities claims in this case somehow expired many years before any of the alleged wrongdoing occurred. Op. Br. at 27. But the relevant statutes of limitations and repose begin running when the *misrepresentation is made* and not when the security is first sold. 15 U.S.C. §§ 77k & 77m. Plaintiff does not even attempt to explain how the limitations period could possibly begin to run, much less expire, before the claim had even accrued in August 2007.

plaintiffs from pursuing class actions under the federal securities laws, individual lawsuits under state law, or arbitration claims. Plaintiffs who claim to have suffered damages after relying upon a misrepresentation in a mutual fund's prospectus will still have multiple avenues of recourse. Affirming the ruling will also ensure that litigants cannot abuse the class action device by restyling claims that should be asserted under the federal securities laws as state-law class actions in order to evade the PSLRA's limitations on damages. Such a result is neither unfair nor unexpected—it was Congress' express purpose in enacting SLUSA in the first place. On the other hand, a ruling endorsing Plaintiff's position would impermissibly eviscerate SLUSA by allowing all future litigants to avoid the PSLRA simply by characterizing any allegedly fraudulent statement at issue as a contractual "promise."

## IV. The District Court Correctly Determined That The Delaware Carve-Out Does Not Apply In The Absence Of A Shareholder Vote.

In a final attempt to save its claims, Plaintiff attempts to invoke an exception to SLUSA known as the Delaware Carve-Out. Plaintiff's effort to invoke the Carve-Out, however, is contrary to the plain language of the statute and has been rejected by every court to consider it.

The Delaware Carve-Out represents a congressional effort to preserve from SLUSA preclusion certain "permissible" state-law claims that are brought under the laws of a defendant's state of incorporation that involve "internal affairs," *i.e.*,

-40-

transformative corporate transactions, dissenters' rights, or shareholder votes.[21]  *See*

15 U.S.C. § 77p(d)(1); *Madden v. Cowen & Co.*, 576 F.3d 957, 964, 970-71 n.7 (9th

Cir. 2009) (discussing Congress' purpose in creating Delaware Carve-out).  Plaintiff

concedes that the only category of "permissible" claims at issue here are claims that

"involve[ ] . . . any recommendation, position, or other communication with respect

to the sale of securities of the issuer that . . . concerns decisions of those equity

holders with respect to voting their securities."  15 U.S.C. § 77p(d)(1)(B)(ii)(II); Op.

Br. at 48-49.  To fall within this category, this Court has ruled that Plaintiff must

allege: (1) a "recommendation, position, or other communication with respect to the

sale of securities," (2) "made by or on behalf of" the issuer or its affiliate to the

shareholders of the issuer, which (3) "concerns" shareholder "decisions . . . with

respect to voting their securities[.]"  *See Madden*, 576 F.3d at 964.  The District

Court correctly decided that Plaintiff's breach of contract and fiduciary duty claims

do not fall under this exception because "shareholders in the instant case were not

---

[21]  Indeed, the "Delaware Carve-Out" moniker itself reflects the reality that a majority of U.S. public companies are incorporated in Delaware, which over time has developed a reticulated and robust corporate law jurisprudence that Congress did not wish to sweep away as a result of SLUSA. *Campbell v. Am. Int'l Grp., Inc.*, 760 F.3d 62, 65 (D.C. Cir. 2014) ("In light of the large number of corporations incorporated under the laws of Delaware, subsection (d)(1)(A) is often referred to as the "Delaware carve-out." (citing *Madden v. Cowen & Co.*, 576 F.3d 957, 964 (9th Cir. 2009 )).

given misleading information in advance of a vote" and "were not induced by misrepresentations to vote one way or another." (ER 68).[22]

Plaintiff's arguments to the contrary lack merit. Plaintiff's principal error is its assertion that "[t]he [Carve-Out] says nothing about the need for the communication or recommendation 'concerning' voting to involve a misrepresentation or omission." Op. Br. at 49. Plaintiff ignores the fact that the Delaware Carve-Out only applies to claims that "would otherwise be subject to [SLUSA's] preclusion provision," *i.e.*, misrepresentation or omission claims. *Madden*, 576 F.3d at 964. Thus, the communications concerning voting shares addressed by the Carve-Out necessarily must constitute a misrepresentation.

This threshold error leads Plaintiff to another. Wrongly assuming that the requisite voter communication need not constitute a misrepresentation, Plaintiff illogically avers that a proxy statement issued a decade before the Defendants' alleged misconduct satisfies the Carve-Out's prerequisites. Op. Br. at 51-52. But it defies logic to suggest that the misrepresentations alleged in the 4AC, all of which

---

[22] Plaintiff's attempt to invoke the Delaware Carve-Out also fails because each of its claims, other than its fiduciary breach claims, do not meet the threshold requirement that they be brought under the laws of the State of incorporation for the Fund, Massachusetts. Plaintiff concedes its third-party beneficiary claim is based on California law. *See* Op. Br. at 46 n.22; (ER 58). Defendants also argue, although the District Court disagreed, that Plaintiff's contract claims are not properly brought under Massachusetts law. (ER 64-66).

were purportedly made *on and after* August 2007, could have been of concern to shareholders voting ten years before these alleged untruths even existed; Plaintiff concedes voting shareholders were provided only true statements. At the relevant time, during or after the Breach Period, there was no vote, so none of the alleged misrepresentations could possibly have concerned any decision related to a shareholder vote. The Carve-Out simply does not apply in the absence of a shareholder vote. *See Hampton,* 146 F. Supp. 3d at 1216 (holding because "no vote was held… this action cannot credibly be said to 'concern decisions of those equity holders with respect to voting their securities'").[23]

As the District Court (and the *Hampton* court) found, *Crimi v. Barnholt*, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) is instructive. *Crimi* addressed allegations that certain members of a company, KLA, breached their fiduciary duty by failing to inform shareholders that KLA issued backdated stock options to senior executives over a period of five years. *Id*. at *1. The court divided the claims into two groups: "holder" claims that were asserted on behalf of individuals who claimed the

---

[23] Plaintiff's argument is further revealed as untenable by the fact that Holz was not a shareholder in 1997 and participated in no vote at that or any time. Holz, and therefore Northstar, cannot invoke the protections of the Carve-Out without establishing, at minimum, that its claim is based on a "*decision* . . . with respect to voting [Holz's] securities." 15 U.S.C. § 77p(d)(1)(B)(ii)(II) (emphasis added). Plaintiff does not even attempt to identify such a "decision" because Holz never voted his securities.

misrepresentations had led them to hold their shares and "voter" claims that were asserted on behalf of individuals who claimed the misrepresentations had led them to vote their shares in a particular way. *Id*. The claims of *both* groups fell within SLUSA's reach because they were based on omissions in proxy statements that deprived shareholders of the ability to make informed decisions. *Id*. at *3. Although the plaintiffs argued that the Delaware Carve-Out saved their claims, the Court held that only the "voter" claims were protected from preclusion because those claims arose from an actual vote that had purportedly been manipulated by the misrepresentations. *Id.* at *4. The court held the Carve-Out did not apply to the "holder" claims because those claims did not "involve a recommendation or communication about shareholders' decisions 'with respect to voting their securities.'" *Id*. Here, the District Court properly held that Plaintiff's claims are similar to the "holder" claims in *Crimi* and not the "voter" claims because there was no vote.

Plaintiff attacks the District Court's reliance on *Crimi* by asserting that, although no vote ever occurred, the alleged misrepresentations here "implicated investors' *right to vote.*" Op. Br. at 51 (emphasis added). Nothing in the statute or the case law suggests, however, that the Delaware Carve-Out applies whenever a plaintiff vaguely alleges that a "right to vote" is "implicated." The investor asserting the claim must have made a "decision" with respect to voting his shares that was

-44-

influenced by some misrepresentation, meaning the misrepresentation must precede the shareholder vote, because the Carve-Out only applies, by its own terms, when the misrepresentations "concern" a "*decision* with respect to voting . . . shares." 15 U.S.C. § 77p(d)(1)(B)(ii)(II) (emphasis added); *Hampton*, 146 F. Supp. 3d at 1216 ("Plaintiff has not cited, nor can the Court locate, any cases in which a court held that the second prong of the Delaware carve-out applies in the absence of a vote."); *see also Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 834 (S.D. Ind. 2011) (Delaware Carve-Out applied "because the vote . . . did not occur until after the policyholders had obtained their shares" and received the allegedly misleading "recommendations included in the information packages").

Finally, Plaintiff tries to save its claims by arguing the Carve-Out should be more broadly construed than the case law actually holds. Of the cases cited by Plaintiff, not a single one actually holds that the Carve-Out should be "broadly construed" and none suggest that 15 U.S.C. § 77p(d)(1)(B)(ii)(II) can ever be applied in the absence of a shareholder vote.[24] Moreover, Plaintiff's suggestion that

---

[24] Plaintiff's reliance on *City of Ann Arbor Employees' Retirement System v. Gecht,* 2007 WL 760568 (N.D. Cal. Mar. 9, 2007) and *In re Metlife Demutualization Litigation*, 2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006) is misplaced because both cases involved misrepresentations made *before* a shareholder vote that were designed to influence that vote. *Gecht,* 2007 WL 760568, at *6 (fraudulent statements made to obtain "shareholder authorization" for corporate action by proxy vote); *In re Metlife Demutualization Litig.*, 2006 WL 2524196, at *6 (Carve-Out applied because fraudulent statements were made in "recommendation[s] . . . that the demutualization be approved" and

SLUSA should be read narrowly but an *exception* to SLUSA should be read broadly is not only self-servingly contradictory, but also violates Ninth Circuit precedent. *See E.E.O.C. v. Kamehameha Sch.*, 990 F.2d 458, 460 (9th Cir. 1993) ("We construe statutory exceptions narrowly."). There is no basis for applying the Delaware Carve-Out to save any of Plaintiff's claims.

## V. Plaintiff's Efforts To Assert Judicial Estoppel And Waiver Are Meritless.

Plaintiff's final argument is that Defendants are equitably precluded, under judicial estoppel and waiver theories, from asserting that Plaintiff's breach of fiduciary duty claims are barred by SLUSA. (Plaintiff asserts no similar argument for its breach of contract or third party beneficiary claims). These estoppel/waiver arguments were considered and rejected by the District Court, which unequivocally held that SLUSA barred Plaintiff's breach of fiduciary duty claims.[25] (ER 41). Appellate review of the District Court's discretionary rejection of these arguments

---

demutualization was then approved by shareholder vote). Plaintiff's remaining authority, *Lewis v. Termeer*, 445 F. Supp. 2d 366 (S.D.N.Y. 2006) does not address shareholder votes at all, but a tender offer, which presents an independent (an inapplicable) basis for invoking the Carve-Out. *See Lewis*, 445 F. Supp. 2d at 372. Plaintiff cites no authority, because none exists, where any court applied the Carve-Out because a plaintiff asserted misrepresentation claims generally "concern[ing]" shareholder rights "with respect to voting their securities" even though the alleged misrepresentations had no bearing on any actual shareholder vote.

[25] Plaintiff abandoned any argument under judicial estoppel or waiver principles in both its opposition to Defendant's motion for judgment on the pleadings and in Plaintiff's motion for reconsideration.

is limited to an "abuse of discretion" standard—a limitation that is noticeably omitted from Plaintiff's brief. *See Hamilton*, 270 F.3d at 782 ("We review the district court's application of the doctrine of judicial estoppel to the facts of this case for an abuse of discretion"); *Novato Fire Prot. Dist. v. U.S.*, 181 F.3d 1135, 1141 (9th Cir. 1999) (on appeal, court considers whether "district court . . . abuse[d] its discretion in refusing to apply the doctrine of waiver"). "Under that standard, this court cannot reverse unless it has a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Tucor Int'l Inc.*, 238 F.3d 1171, 1175 (9th Cir. 2001). Plaintiff does not recognize this standard, let alone attempt to satisfy it.

In any event, Plaintiff's arguments are substantively meritless. First and foremost, the statement by counsel that Plaintiff claims constituted a waiver was presented to this Court *before* this Court expressly directed the District Court to consider whether the breach of fiduciary duty claims (and Plaintiff's other claims) were precluded by SLUSA. (ER 209). The District Court properly considered and rejected Plaintiff's waiver argument, choosing instead to follow this Court's directive to consider the SLUSA argument as to all claims on the merits "in the first instance." *Id.* It was not an abuse of discretion for the District Court to follow this Court's directive and Plaintiff does not suggest otherwise.

Second, the District Court's decision to consider SLUSA as to all claims is consistent with precedent recognizing that defenses may be asserted anew, even if previously waived or unasserted, when a plaintiff files an amended complaint. *See, e.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1017 (C.D. Cal. 2011) (defendant "is entitled to reassert previously waived affirmative defenses in response to [an] amended pleading."); *see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (amended complaint "opens the door" to raise previously unasserted affirmative defenses). Here, Plaintiff was granted leave to file its 4AC over Defendants' objection, which allowed any and all defenses to be raised. After affording Plaintiff five opportunities to restyle its claims, which Plaintiff used to assert conflicting legal theories at various times depending on the exigencies of the moment,[26] it was well within the District Court's discretion to consider an affirmative defense properly asserted in response to the latest iteration of the complaint, especially following this Court's directive that the District Court consider that defense.[27]

---

[26] *E.g.*, *compare* ER 438 (pleading Plaintiff's breach of fiduciary duty claim "is asserted under California law") *with* ER 150 (pleading the same claim is "based on the law of the Commonwealth of Massachusetts").

[27] Plaintiff also ignores that judicial estoppel does not apply unless a party *prevails on a prior position* and then seeks to change that position. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase") (internal quotation marks

The District Court properly considered whether the gravamen of Plaintiff's claims were based on alleged misrepresentations or omissions and, having answered that question in the affirmative, appropriately dismissed all of Plaintiff's claims under SLUSA. That decision was well supported by all relevant case law and the extensive record that has been generated since this case was first filed in 2008. That order should be affirmed and this case should be brought to a final conclusion.

## CONCLUSION

For the foregoing reasons, the District Court's order dismissing Plaintiff's claims with prejudice should be affirmed.


Dated:   August 4, 2016                         Respectfully Submitted,

                                                DECHERT LLP

                                                By: /s/     *Joshua D. N. Hess*_____
                                                Matthew L. Larrabee
                                                Joshua D. N. Hess
                                                Brian C. Raphel
                                                One Bush Street, Suite 1600
                                                San Francisco, CA 94104

                                                *Attorneys for Defendants-Appellees*

---

omitted). Plaintiff does not point to any argument that Defendants prevailed upon and then sought to change. Any argument suggesting that the Delaware Carve-Out does not apply is an argument asserted by *Plaintiff*, not Defendant, and it was *unsuccessful* in the proceedings below.

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/    *Richard A. Schirtzer*
Richard A. Schirtzer
Karin A. Kramer
Arthur M. Roberts
50 California Street, 22nd Floor
San Francisco, CA 94111

*Attorneys for Mariann Byerwalter, Donald
F. Dorward, William A. Hasler, Robert G.
Holmes, Gerald B. Smith, Donald R.
Stephens, Michael W. Wilsey, Charles R.
Schwab, Randall W. Merk, Joseph H.
Wender and John F. Cogan*

## <u>CIRCUIT RULE 28-2.6 STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6(c), Defendants identify *Hampton v. Pacific Investment Management Company LLC, et. al.*, No. 15-56841, which was filed three months before this appeal, as a related cased case that "raise[s] the same or closely related issues." Like this case, *Hampton* addresses claims that a District Court held were precluded by SLUSA, which involved allegations that mutual fund shareholders were harmed when they purchased or held shares in a fund in reliance on allegedly untrue annual representations that the mutual fund would be managed subject to certain investment restrictions. This appeal, however, is broader than the appeal filed in *Hampton* because Plaintiff has asserted several defenses that have not been asserted in *Hampton*, including the Delaware Carve-Out, judicial estoppel, and waiver. *Hampton* was filed first and briefing in *Hampton* is further along than this appeal so, accordingly, Defendants respectfully submit that there is no reason to delay consideration of the narrow appeal in *Hampton* in consideration of this case.

Plaintiff has also identified *Fleming v. The Charles Schwab Corp.*, No. 16-15179 and *Lim v. Charles Schwab & Co., Inc.*, No. 16-15189 as related cases. Although these consolidated appeals also challenge a District Court's dismissal under SLUSA, the type of misrepresentation alleged in *Fleming* and *Lim* is different from the type of misrepresentation alleged here and in *Hampton* and involves other, distinct legal issues. Given these differences, Defendants respectfully submit that it

would not be useful to coordinate the consideration of *Fleming* and *Lim* with this case.

By: */s/ Joshua D.N. Hess*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C)(i), I hereby certify that the foregoing Brief for Defendants-Appellees complies with Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,184 words. I also certify that this Brief complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared using Microsoft Word with a proportionally spaced 14-point font in Times New Roman.

By: */s/ Joshua D.N. Hess*

## CERTIFICATE OF SERVICE (CM/ECF)

The undersigned certifies that on August 4, 2016, the foregoing Brief for Defendant-Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


By: /s/ Joshua D. N. Hess

15999724.20.LITIGATION